NORTH CAROLINA ET AL. *v.* PEARCE.

No. 413. Argued February 24, 1969.—Decided June 23, 1969.*

*Together with No. 418, *Simpson, Warden* v. *Rice,* on certiorari to the United States Court of Appeals for the Fifth Circuit.

*Andrew A. Vanore, Jr.,* argued the cause for petitioners in No. 413. With him on the brief was *Thomas Wade Bruton,* Attorney General of North Carolina, joined in and adopted by the Attorneys General for their respective States as follows: *MacDonald Gallion* of Alabama, *David P. Buckson* of Delaware, *John B. Breckinridge* of Kentucky, *Jack P. F. Gremillion* of Louisiana, *James S. Erwin* of Maine, *Joe T. Patterson* of Mississippi, *Forrest H. Anderson* of Montana, *Clarence A. H. Meyer* of Nebraska, *Arthur J. Sills* of New Jersey, *William C. Sennett* of Pennsylvania, *Herbert F. De-Simone* of Rhode Island, *Daniel R. McLeod* of South Carolina, *George F. McCanless* of Tennessee, *Crawford C. Martin* of Texas, *Bronson C. LaFollette* of Wisconsin, and *James E. Barrett* of Wyoming; and *Paul J. Abbate,* Attorney General, for the Territory of Guam. *Paul T. Gish, Jr.,* Assistant Attorney General of Alabama, argued the cause for petitioner in No. 418. With him on the brief was *MacDonald Gallion,* Attorney General.

*Larry B. Sitton,* by appointment of the Court, 393 U. S. 973, argued the cause and filed a brief for respondent in No. 413. *Thomas S. Lawson, Jr.,* argued the cause for respondent in No. 418. With him on the brief was *Oakley Melton, Jr.,* by appointment of the Court, 393 U. S. 1010.

*Robert C. Londerholm,* Attorney General, and *Edward G. Collister, Jr.,* Assistant Attorney General, filed a brief for the State of Kansas as *amicus curiae* in No. 413. *William W. Van Alstyne* and *Melvin L. Wulf* filed a brief for the American Civil Liberties Union et al. as *amici curiae* in both cases.

MR. JUSTICE STEWART delivered the opinion of the Court.

When at the behest of the defendant a criminal conviction has been set aside and a new trial ordered, to what extent does the Constitution limit the imposition of a harsher sentence after conviction upon retrial? That is the question presented by these two cases.

In No. 413 the respondent Pearce was convicted in a North Carolina court upon a charge of assault with intent to commit rape. The trial judge sentenced him to prison for a term of 12 to 15 years. Several years later he initiated a state post-conviction proceeding which culminated in the reversal of his conviction by the Supreme Court of North Carolina, upon the ground that an involuntary confession had unconstitutionally been admitted in evidence against him, 266 N. C. 234, 145 S. E. 2d 918. He was retried, convicted, and sentenced by the trial judge to an eight-year prison term, which, when added to the time Pearce had already spent in prison, the parties agree amounted to a longer total sentence than that originally imposed.[1] The conviction and sentence were affirmed on appeal. 268 N. C. 707, 151 S. E. 2d 571. Pearce then began this habeas corpus proceeding in the United States District Court for the Eastern Dis-

---

[1] The approximate expiration date of the original sentence, assuming all allowances of time for good behavior, was November 13, 1969. The approximate expiration date of the new sentence, assuming all allowances of time for good behavior, was October 10, 1972.

trict of North Carolina. That court held, upon the authority of a then very recent Fourth Circuit decision, *Patton* v. *North Carolina*, 381 F. 2d 636, cert. denied, 390 U. S. 905, that the longer sentence imposed upon retrial was "unconstitutional and void." [2] Upon the failure of the state court to resentence Pearce within 60 days, the federal court ordered his release. This order was affirmed by the United States Court of Appeals for the Fourth Circuit, 397 F. 2d 253, in a brief *per curiam* judgment citing its *Patton* decision, and we granted certiorari. 393 U. S. 922.

In No. 418 the respondent Rice pleaded guilty in an Alabama trial court to four separate charges of second-degree burglary. He was sentenced to prison terms aggregating 10 years.[3] Two and one-half years later the judgments were set aside in a state *coram nobis* proceeding, upon the ground that Rice had not been accorded his constitutional right to counsel. See *Gideon* v. *Wainwright*, 372 U. S. 335. He was retried upon three of the charges, convicted, and sentenced to prison terms aggregating 25 years.[4] No credit was given for the time he had spent in prison on the original judgments. He then brought this habeas corpus proceeding in the United States District Court for the Middle District of

[2] In *Patton*, the Court of Appeals for the Fourth Circuit had held that "increasing Patton's punishment after the reversal of his initial conviction constitutes a violation of his Fourteenth Amendment rights in that it exacted an unconstitutional condition to the exercise of his right to a fair trial, arbitrarily denied him the equal protection of the law, and placed him twice in jeopardy of punishment for the same offense." 381 F. 2d, at 646.

[3] He was sentenced to four years in prison upon the first count, and two years upon each of the other three counts, the sentences to be served consecutively.

[4] He was sentenced to a prison term of 10 years on the first count, 10 years on the second count, and five years on the fourth count, the sentences to be served consecutively. The third count was dropped upon motion of the prosecution, apparently because the chief witness for the prosecution had left the State.

Alabama, alleging that the state trial court had acted unconstitutionally in failing to give him credit for the time he had already served in prison, and in imposing grossly harsher sentences upon retrial. United States District Judge Frank M. Johnson, Jr., agreed with both contentions. While stating that he did "not believe that it is constitutionally impermissible to impose a harsher sentence upon retrial if there is recorded in the court record some legal justification for it," Judge Johnson found that Rice had been denied due process of law, because "[u]nder the evidence in this case, the conclusion is inescapable that the State of Alabama is punishing petitioner Rice for his having exercised his post-conviction right of review and for having the original sentences declared unconstitutional." 274 F. Supp. 116, 121, 122. The judgment of the District Court was affirmed by the United States Court of Appeals for the Fifth Circuit, "on the basis of Judge Johnson's opinion," 396 F. 2d 499, 500, and we granted certiorari. 393 U. S. 932.

The problem before us[5] involves two related but analytically separate issues. One concerns the constitutional

---

[5] The United States Courts of Appeals have reached conflicting results in dealing with the basic problem here presented. In addition to the Fourth and Fifth Circuit decisions here under review, see *Marano* v. *United States,* 374 F. 2d 583 (C. A. 1st Cir.); *United States* v. *Coke,* 404 F. 2d 836 (C. A. 2d Cir.); *Starner* v. *Russell,* 378 F. 2d 808 (C. A. 3d Cir.); *United States* v. *White,* 382 F. 2d 445 (C. A. 7th Cir.); *Walsh* v. *United States,* 374 F. 2d 421 (C. A. 9th Cir.); *Newman* v. *Rodriguez,* 375 F. 2d 712 (C. A. 10th Cir.). The state courts have also been far from unanimous. Although most of the States seem either not to have considered the problem, or to have imposed only the generally applicable statutory limits upon sentences after retrial, a few States have prohibited more severe sentences upon retrial than were imposed at the original trial. See *People* v. *Henderson,* 60 Cal. 2d 482, 386 P. 2d 677; *People* v. *Ali,* 66 Cal. 2d 277, 424 P. 2d 932; *State* v. *Turner,* 247 Ore. 301, 429 P. 2d 565; *State* v. *Wolf,* 46 N. J. 301, 216 A. 2d 586; *State* v. *Leonard,* 39 Wis. 2d 461, 159 N. W. 2d 577.

limitations upon the imposition of a more severe punishment after conviction for the same offense upon retrial. The other is the more limited question whether, in computing the new sentence, the Constitution requires that credit must be given for that part of the original sentence already served. The second question is not presented in *Pearce,* for in North Carolina it appears to be the law that a defendant must be given full credit for all time served under the previous sentence. *State* v. *Stafford,* 274 N. C. 519, 164 S. E. 2d 371; *State* v. *Paige,* 272 N. C. 417, 158 S. E. 2d 522; *State* v. *Weaver,* 264 N. C. 681, 142 S. E. 2d 633. In any event, Pearce was given such credit.[6] Alabama law, however, seems to reflect a different view. *Aaron* v. *State,* 43 Ala. App. 450, 192 So. 2d 456; *Ex parte Merkes,* 43 Ala. App. 640, 198 So. 2d 789.[7] And respondent Rice, upon being resentenced, was given no credit at all for the two and one-half years he had already spent in prison.

We turn first to the more limited aspect of the question before us—whether the Constitution requires that, in computing the sentence imposed after conviction upon

---

[6] "THE COURT: It is the intention of this Court to give the defendant a sentence of fifteen years in the State Prison; however, it appears to the Court from the records available from the Prison Department that the defendant has served 6 years, 6 months and 17 days flat and gain time combined, and the Court in passing sentence in this case is taking into consideration the time already served by the defendant. IT IS THE JUDGMENT of this Court that the defendant be confined to the State's Prison for a period of eight years."

[7] A recent opinion of the Supreme Court of Alabama indicates that state law does require credit for time served under the original sentence at least to the extent that the total period of imprisonment would otherwise exceed the absolute statutory maximum that could be imposed for the offense in question. "Without such credit defendant would be serving time beyond the maximum fixed by law for the offense . . . charged in the indictment." *Goolsby* v. *State,* 283 Ala. 269, 215 So. 2d 602.

retrial, credit must be given for time served under the original sentence. We then consider the broader question of what constitutional limitations there may be upon the imposition of a more severe sentence after reconviction.

## I.

The Court has held today, in *Benton* v. *Maryland, post,* p. 784, that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. That guarantee has been said to consist of three separate constitutional protections.[8] It protects against a second prosecution for the same offense after acquittal.[9] It protects against a second prosecution for the same offense after conviction.[10] And it protects against multiple punishments for the same offense.[11] This last protection is what is necessarily implicated in any consideration of the question whether, in the imposition of sentence for the same offense after retrial, the Constitution requires that credit must be given for punishment already endured. The Court stated the controlling constitutional principle almost 100 years ago, in the landmark case of *Ex parte Lange,* 18 Wall. 163, 168:

> "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party

---

[8] See Note, Twice in Jeopardy, 75 Yale L. J. 262, 265–266 (1965).

[9] *United States* v. *Ball,* 163 U. S. 662; *Green* v. *United States,* 355 U. S. 184.

[10] *In re Nielsen,* 131 U. S. 176.

[11] *Ex parte Lange,* 18 Wall. 163; *United States* v. *Benz,* 282 U. S. 304, 307; *United States* v. *Sacco,* 367 F. 2d 368; *United States* v. *Adams,* 362 F. 2d 210; *Kennedy* v. *United States,* 330 F. 2d 26.

when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

. . . . .

". . . [T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Id.,* at 173.

We think it is clear that this basic constitutional guarantee is violated when punishment already exacted for an offense is not fully "credited" in imposing sentence upon a new conviction for the same offense. The constitutional violation is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction. Suppose, for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving three years in prison. If, upon reconviction, he is given a 10-year sentence, then, quite clearly, he will have received multiple punishments for the same offense. For he will have been compelled to serve separate prison terms of three years and 10 years, although the maximum single punishment for the offense is 10 years' imprisonment. Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed.[12]

We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully

---

[12] We have spoken in terms of imprisonment, but the same rule would be equally applicable where a fine had been actually paid upon the first conviction. Any new fine imposed upon reconviction would have to be decreased by the amount previously paid.

"credited"[13] in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed.

## II.

To hold that the second sentence must be reduced by the time served under the first is, however, to give but a partial answer to the question before us.[14] We turn, therefore, to consideration of the broader problem of what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received.

## A.

Long-established constitutional doctrine makes clear that, beyond the requirement already discussed, the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction. At least since 1896, when *United States* v. *Ball*,

---

[13] Such credit must, of course, include the time credited during service of the first prison sentence for good behavior, etc.

[14] In most situations, even when time served under the original sentence is fully taken into account, a judge can still sentence a defendant to a longer term in prison than was originally imposed. That is true with respect to both cases before us. In the *Pearce* case, credit for time previously served was given. See n. 6, *supra*. In the *Rice* case credit for the two and one-half years served was not given, but even if it had been, the sentencing judge could have reached the same result that he did reach simply by sentencing Rice to 27½ years in prison. That would have been permissible under Alabama law, since Rice was convicted of three counts of second-degree burglary, and on each count a maximum sentence of 10 years' imprisonment could have been imposed. Ala. Code, Tit. 14, § 86 (1958).

163 U. S. 662, was decided, it has been settled that this constitutional guarantee imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside.[15] "The principle that this provision does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence." *United States* v. *Tateo,* 377 U. S. 463, 465. And at least since 1919, when *Stroud* v. *United States,* 251 U. S. 15, was decided, it has been settled that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction.[16] "That a defendant's conviction is overturned on collateral rather than direct attack is irrelevant for these purposes, see *Robinson* v. *United States,* 144 F. 2d 392, 396, 397, aff'd on another ground, 324 U. S. 282." *United States* v. *Tateo, supra,* at 466.

Although the rationale for this "well-established part of our constitutional jurisprudence" has been variously

---

[15] See, *e. g., Stroud* v. *United States,* 251 U. S. 15; *Bryan* v. *United States,* 338 U. S. 552; *Forman* v. *United States,* 361 U. S. 416; *United States* v. *Tateo,* 377 U. S. 463.

[16] In *Stroud* the defendant was convicted of first-degree murder and sentenced to life imprisonment. After reversal of this conviction, the defendant was retried, reconvicted of the same offense, and sentenced to death. This Court upheld the conviction against the defendant's claim that his constitutional right not to be twice put in jeopardy had been violated. See also *Murphy* v. *Massachusetts,* 177 U. S. 155; *Robinson* v. *United States,* 324 U. S. 282, affirming 144 F. 2d 392. The Court's decision in *Green* v. *United States,* 355 U. S. 184, is of no applicability to the present problem. The *Green* decision was based upon the double jeopardy provision's guarantee against retrial for an offense of which the defendant was *acquitted.*

verbalized, it rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean. As to whatever punishment has actually been suffered under the first conviction, that premise is, of course, an unmitigated fiction, as we have recognized in Part I of this opinion.[17] But, so far as the conviction itself goes, and that part of the sentence that has not yet been served, it is no more than a simple statement of fact to say that the slate *has* been wiped clean. The conviction *has* been set aside, and the unexpired portion of the original sentence will never be served. A new trial may result in an acquittal. But if it does result in a conviction, we cannot say that the constitutional guarantee against double jeopardy of its own weight restricts the imposition of an otherwise lawful single punishment for the offense in question. To hold to the contrary would be to cast doubt upon the whole validity of the basic principle enunciated in *United States* v. *Ball, supra,* and upon the unbroken line of decisions that have followed that principle for almost 75 years. We think those decisions are entirely sound, and we decline to depart from the concept they reflect.[18]

---

[17] Cf. *King* v. *United States,* 69 App. D. C. 10, 12–13, 98 F. 2d 291, 293–294: "The Government's brief suggests, in the vein of The Mikado, that because the first sentence was void appellant 'has served no sentence but has merely spent time in the penitentiary;' that since he should not have been imprisoned as he was, he was not imprisoned at all."

[18] "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punish-

## B.

The other argument advanced in support of the proposition that the Constitution absolutely forbids the imposition of a more severe sentence upon retrial is grounded upon the Equal Protection Clause of the Fourteenth Amendment. The theory advanced is that, since convicts who do not seek new trials cannot have their sentences increased, it creates an invidious classification to impose that risk only upon those who succeed in getting their original convictions set aside. The argument, while not lacking in ingenuity, cannot withstand close examination. In the first place, we deal here, not with increases in existing sentences, but with the imposition of wholly new sentences after wholly new trials. Putting that conceptual nicety to one side, however, the problem before us simply cannot be rationally dealt with in terms of "classifications." A man who is retried after his first conviction has been set aside may be acquitted. If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed. The result may depend upon a particular combination of infinite variables peculiar to each individual trial. It simply cannot be said that a State has invidiously "classified" those who successfully seek new trials, any more than that the State has invidiously "classified" those prisoners whose convictions are *not* set aside by denying the mem-

ment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest." *United States* v. *Tateo,* 377 U. S. 463, 466.

bers of that group the opportunity to be acquitted. To fit the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished.

### C.

We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." *Williams* v. *New York,* 337 U. S. 241, 245. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams* v. *New York, supra,* that a State may adopt the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." *Id.,* at 247.

To say that there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial is not, however, to end the inquiry. There remains for consideration the impact of the Due Process Clause of the Fourteenth Amendment.

It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his

having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, "penalizing those who choose to exercise" constitutional rights, "would be patently unconstitutional." *United States* v. *Jackson,* 390 U. S. 570, 581. And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to "chill the exercise of basic constitutional rights." *Id.,* at 582. See also *Griffin* v. *California,* 380 U. S. 609; cf. *Johnson* v. *Avery,* 393 U. S. 483. But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law.[19]  "A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant." *Nichols* v. *United States,* 106 F. 672, 679. A court is "without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . . [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." *Worcester* v. *Commissioner,* 370 F. 2d 713, 718. See *Short* v. *United States,* 120 U. S. App. D. C. 165, 167, 344 F. 2d 550, 552. "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Griffin* v. *Illinois,* 351 U. S. 12; *Douglas* v. *California,* 372 U. S.

---

[19] See Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L. J. 606 (1965); Note, Unconstitutional Conditions, 73 Harv. L. Rev. 1595 (1960).

353; *Lane* v. *Brown,* 372 U. S. 477; *Draper* v. *Washington,* 372 U. S. 487." *Rinaldi* v. *Yeager,* 384 U. S. 305, 310–311.

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.[20]

---

[20] The existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case. But data have been collected to show that increased sentences on reconviction are far from rare. See Note, Constitutional Law: Increased Sentence and Denial of Credit on Retrial Sustained Under Traditional Waiver Theory, 1965 Duke L. J. 395. A touching bit of evidence showing the fear of such a vindictive policy was noted by the trial judge in *Patton* v. *North Carolina,* 256 F. Supp. 225, who quoted a letter he had recently received from a prisoner:

"Dear Sir:

"I am in the Mecklenburg County jail. Mr. ——————— chose to re-try me as I knew he would.

. . . . .

"Sir the other defendant in this case was set free after serving 15 months of his sentence, I have served 34 months and now I am to be tried again and with all probility I will receive a heavier sentence then before as you know sir my sentence at the first trile was 20 to 30 years. I know it is usuelly the courts prosedure to give a larger sentence when a new trile is granted I guess this is to discourage Petitioners.

"Your Honor, I don't want a new trile I am afraid of more time . . . .

"Your Honor, I know you have tried to help me and God knows I apreceate this but please sir don't let the state re-try me if there is any way you can prevent it."

"Very truly yours"

*Id.,* at 231, n. 7.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

We dispose of the two cases before us in the light of these conclusions. In No. 418 Judge Johnson noted that "the State of Alabama offers no evidence attempting to justify the increase in Rice's original sentences . . . ." 274 F. Supp., at 121. He found it "shocking that the State of Alabama has not attempted to explain or justify the increase in Rice's punishment—in these three cases, over threefold." *Id.*, at 121–122. And he found that "the conclusion is inescapable that the State of Alabama is punishing petitioner Rice for his having exercised his post-conviction right of review . . . ." *Id.*, at 122. In No. 413 the situation is not so dramatically clear. Nonetheless, the fact remains that neither at the time the increased sentence was imposed upon Pearce, nor at any stage in this habeas corpus proceeding, has the State offered any reason or justification for that sentence beyond the naked power to impose it. We conclude that in each of the cases before us, the judgment should be affirmed.

*It is so ordered.*

Mr. Justice Douglas, whom Mr. Justice Marshall joins, concurring.

Although I agree with the Court as to the reach of due process, I would go further. It is my view that if for any reason a new trial is granted and there is a convic-

tion a second time, the second penalty imposed cannot exceed the first penalty, if respect is had for the guarantee against double jeopardy.

The theory of double jeopardy is that a person need run the gantlet only once. The gantlet is the risk of the range of punishment which the State or Federal Government imposes for that particular conduct. It may be a year to 25 years, or 20 years to life, or death. He risks the maximum permissible punishment when first tried. That risk having been faced once need not be faced again. And the fact that he takes an appeal does not waive his constitutional defense of former jeopardy to a second prosecution. *Green* v. *United States,* 355 U. S. 184, 191–193.

In the *Green* case, the defendant was charged with arson on one count and on a second count was charged with either first-degree murder carrying a mandatory death sentence, or second-degree murder carrying a maximum sentence of life imprisonment. The jury found him guilty of arson and second-degree murder but the verdict was silent as to first-degree murder. He appealed the conviction and obtained a reversal. On a remand he was tried again. This time he was convicted of first-degree murder and sentenced to death— hence his complaint of former jeopardy. We held that the guarantee of double jeopardy applied and that the defendant, having been "in direct peril of being convicted and punished for first degree murder at his first trial" could not be "forced to run the gantlet" twice. 355 U. S., at 190.

It is argued that that case is different because there were two different crimes with different punishments provided by statute for each one. That, however, is a matter of semantics. "It is immaterial to the basic purpose of the constitutional provision against double jeopardy whether the Legislature divides a crime into different degrees carrying different punishments or

allows the court or jury to fix different punishments for the same crime." *People* v. *Henderson,* 60 Cal. 2d 482, 497, 386 P. 2d 677, 686 (1963) (Traynor, J.).

From the point of view of the individual and his liberty, the risk here of getting from one to 15 years for specified conduct is different only in degree from the risk in *Green* of getting life imprisonment or capital punishment for specified conduct. Indeed, that matter was well understood by the dissenters in *Green:*

> "As a practical matter, and on any basis of human values, it is scarcely possible to distinguish a case in which the defendant is convicted of a greater offense from one in which he is convicted of an offense that has the same name as that of which he was previously convicted but carries a significantly different punishment, namely death rather than imprisonment." 355 U. S., at 213 (Frankfurter, J., dissenting).[1]

The defendants in the present cases at the first trial faced the risk of maximum punishment and received less. In the second trial they were made to run the gantlet twice, since the Court today holds that the penalties can be increased.

It was established at an early date that the Fifth Amendment was designed to prevent an accused from

---

[1] "With the benefit of *Green* v. *United States* . . . there is support emerging in favor of a broad double jeopardy rule which would protect all federal and state convicts held in prison under erroneous convictions or sentences from harsher resentencing following retrial. . . . [T]he technical argument applying that rule would be as follows: When a particular penalty is selected from a range of penalties prescribed for a given offense, and when that penalty is imposed upon the defendant, the judge or jury is impliedly 'acquitting' the defendant of a greater penalty, just as the jury in *Green* impliedly acquitted . . . the accused of a greater degree of the same offense." Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L. J. 606, 634–635 (1965).

running the risk of "double punishment." *United States* v. *Ewell,* 383 U. S. 116, 124. When Madison introduced to the First Congress his draft of what became the Double Jeopardy Clause, it read:

> "No person shall be subject, except in cases of impeachment, to *more than one punishment* or one trial for the same offence . . . ." (Emphasis supplied.) 1 Annals of Cong. 434.

The phrasing of that proposal was changed at the behest of those who feared that the reference to but "one trial" might prevent a convicted man from obtaining a new trial on writ of error. *Id.,* at 753. But that change was not intended to alter the ban against double punishment. Sigler, A History of Double Jeopardy, 7 Am. J. Legal Hist. 283, 304–306 (1963).

> "By forbidding that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb,' [the safeguard of the Fifth Amendment against double punishment] guarded against the repetition of history by . . . punishing [a man] for an offense when he had already suffered the punishment for it." *Roberts* v. *United States,* 320 U. S. 264, 276 (Frankfurter, J., dissenting).[2]

The inquiry, then, is into the meaning of "double" or "multiple" punishment. In *Ex parte Lange,* 18 Wall. 163, the petitioner had been sentenced to one-year imprisonment *and* $200 in fines, under a federal statute providing for a maximum penalty of one-year imprisonment *or* $200 in fines. On writ of habeas corpus five days later, the trial court re-examined its own prior sentence and reset it, instead, at one-year imprisonment

---

[2] "Our minds rebel against permitting the same sovereignty to punish an accused twice for the same offense." *Francis* v. *Resweber,* 329 U. S. 459, 462 (opinion by Reed, J.). See also *Williams* v. *Oklahoma,* 358 U. S. 576, 584–586.

without credit for time already served. This Court, on certiorari, ordered petitioner discharged altogether. It reasoned that the trial court had power to impose a sentence of either imprisonment or fine. Because the petitioner had paid the fine, he had already suffered complete punishment for his crime and could not be subjected to further sanction:

> "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence." *Id.*, at 168.

*Ex parte Lange* left it somewhat in doubt, whether the ban on double punishment applied only to situations in which the second sentence was added to one that had been completely served; or whether it also applied to the case where the second sentence was added to one still being served. It was not until *United States* v. *Benz*, 282 U. S. 304, that the Court clarified its position. In that case, having initially set the defendant's sentence at 10 months, the trial court later reduced the sentence to six months. The Government appealed, and the question was certified to this Court, whether a reduction in sentence violated the Double Jeopardy Clause:

> "The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. . . . The rule is not confined to civil cases, but applies in criminal

cases as well, *provided the punishment be not augmented. Ex parte Lange,* 18 Wall. 163, 167–174 [additional citations omitted]. In the present case the power of the court was exercised to mitigate the punishment, not to increase it, and is thus brought within the limitation. . . .

"The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution . . . . This is the basis of the decision in *Ex parte Lange, supra."* (Emphasis supplied.) 282 U. S., at 306–307.

The governing principle has thus developed that a convicted man may be retried after a successful appeal, *Bryan* v. *United States,* 338 U. S. 552; that he may run the risk, on retrial, of receiving a sentence as severe as that previously imposed, *United States* v. *Ball,* 163 U. S. 662; and that he may run the risk of being tried for a separate offense, *Williams* v. *Oklahoma,* 358 U. S. 576. But with all deference I submit that the State does not, because of prior error, have a second chance to obtain an enlarged sentence.[3] Where a man successfully attacks

---

[3] "I read the Double Jeopardy Clause as applying a strict standard. . . . It is designed to help equalize the position of government and the individual, to discourage abusive use of the awesome power of society. Once a trial starts jeopardy attaches. The prosecution must stand or fall on its performance at the trial. . . . The policy of the Bill of Rights is to make rare indeed the occasions when the citizen can for the same offense be required to run the gantlet twice. The risk of judicial arbitrariness rests where, in my view, the Constitution puts it—on the Government." *Gori* v. *United*

a sentence that he has already "fully served" (*Street* v. *New York*, 394 U. S. 576), the State cannot create an additional sentence and send him back to prison. *Ex parte Lange, supra*. Similarly, where a defendant successfully attacks a sentence that he has begun to serve, the State cannot impose an added sentence by sending him to prison for a greater term.[4]

*States*, 367 U. S. 364, 372–373 (DOUGLAS, J., dissenting). This Court has never held anything to the contrary. While *Stroud* v. *United States*, 251 U. S. 15, involved a defendant who received the death penalty upon retrial after successfully appealing a sentence of life imprisonment,

"it appears that the case was argued . . . on the theory that the defendant was put twice in jeopardy for the same offense merely by being retried on an indictment for first degree murder. There is no indication that the Court was presented with the argument that the risk of an increased penalty on retrial violates the double jeopardy clause by being a double punishment for the same offense. *Stroud* thus stands for no more than the well-established proposition that the double jeopardy clause does not entitle a defendant who successfully attacks his conviction to absolute immunity from reprosecution." *Patton* v. *North Carolina*, 381 F. 2d 636, 644–645 (C. A. 4th Cir. 1967).

To the extent that *Stroud* stands for anything to the contrary, it has been vitiated by *Green* v. *United States, supra. People* v. *Henderson*, 60 Cal. 2d 482, 386 P. 2d 677 (1963). Other cases involving the matter of increased sentencing upon retrial have either been ones in which the matter was not before the court because the parties did not raise it, *Robinson* v. *United States*, 144 F. 2d 392 (C. A. 6th Cir. 1944), aff'd, 324 U. S. 282, or because it was not necessary to a decision, *Fay* v. *Noia*, 372 U. S. 391, 440; or state cases in which this Court applied a loose standard of due process in lieu of the uncompromising dictates of the Double Jeopardy Clause, *Palko* v. *Connecticut*, 302 U. S. 319; *Francis* v. *Resweber*, 329 U. S. 459.

[4] Among the federal courts, some agree that increased sentencing upon retrial constitutes double jeopardy, *Patton* v. *North Carolina*, 381 F. 2d 636 (C. A. 4th Cir. 1967); *United States* v. *Adams*, 362 F. 2d 210 (C. A. 6th Cir. 1966). Other courts of appeals have found it unnecessary to resolve the matter but have indicated that,

The ban on double jeopardy has its roots deep in the history of occidental jurisprudence. "Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization." *Bartkus* v. *Illinois,* 359 U. S. 121, 151–155 (BLACK, J., dissenting). And its purposes are several. It prevents the State from using its criminal processes as an instrument of harassment to wear the accused out

properly presented, they too would prohibit increased sentencing as a violation of the ban against double jeopardy. Compare *Walsh* v. *United States,* 374 F. 2d 421 (C. A. 9th Cir. 1967), with *Jack* v. *United States,* 387 F. 2d 471 (C. A. 9th Cir. 1967); *Castle* v. *United States,* 399 F. 2d 642 (C. A. 5th Cir. 1968). Still other circuits have found the Double Jeopardy Clause unavailing and would permit increased sentencing whenever justified by newly revealed evidence, *Marano* v. *United States,* 374 F. 2d 583 (C. A. 1st Cir. 1967), and *United States* v. *Coke,* 404 F. 2d 836 (C. A. 2d´ Cir. 1968); whenever supported by standards of rational sentencing, absent an intent to penalize the defendant for seeking a new trial, *United States* v. *White,* 382 F. 2d 445 (C. A. 7th Cir. 1967); or whenever considered appropriate by the sentencing judge, *Short* v. *United States,* 120 U. S. App. D. C. 165, 344 F. 2d 550 (1965); *Starner* v. *Russell,* 378 F. 2d 808 (C. A. 3d Cir. 1967); and *Newman* v. *Rodriguez,* 375 F. 2d 712 (C. A. 10th Cir. 1967).

Among the States, the governing standards are similarly mixed. An increase in sentence where the defendant can show that it reflects an intent to punish him for seeking a new trial is one instance, *State* v. *White,* 262 N. C. 52, 136 S. E. 2d 205 (1964). Of the States that prohibit increased sentencing upon retrial, some rest on state standards of double jeopardy, *People* v. *Henderson,* 60 Cal. 2d 482, 386 P. 2d 677 (1963); some ground that result in the "chilling effect" that a contrary rule would have on the right "to correct an erroneously conducted initial trial." *State* v. *Wolf,* 46 N. J. 301, 216 A. 2d 586 (1966), and *State* v. *Turner,* 247 Ore. 301, 313, 429 P. 2d 565, 570 (1967). Still others have reached that result either "as a matter of judicial policy," *State* v. *Holmes,* 281 Minn. 294, 296, 161 N. W. 2d 650, 652 (1968), or because of a state statute, *Rush* v. *State,* 239 Ark. 878, 395 S. W. 2d 3 (1965).

Some States, evidently for reasons other than double jeopardy, prohibit increased sentencing except where affirmatively justified

by a multitude of cases with accumulated trials. *Abbate* v. *United States,* 359 U. S. 187, 198–199 (opinion by BRENNAN, J.).

It serves the additional purpose of precluding the State, following *acquittal,* from successively retrying the defendant in the hope of securing a conviction. "The vice

by newly developed evidence, *People* v. *Mulier,* 12 Mich. App. 28, 162 N. W. 2d 292; *People* v. *Thiel,* 29 App. Div. 2d 913, 289 N. Y. S. 2d 879; and *State* v. *Leonard,* 39 Wis. 2d 461, 159 N. W. 2d 577 (1968).

Although unwilling to place a ceiling over the sentencing at retrial, some States do allow credit for time already served, *Tilghman* v. *Culver,* 99 So. 2d 282 (Fla. 1957) (based on double jeopardy); *Moore* v. *Parole Board,* 379 Mich. 624, 154 N. W. 2d 437 (1967) (based on a local statute); *State* v. *Boles,* 151 W. Va. 1033, 159 S. E. 2d 36 (1967) (based on due process and equal protection); *Gray* v. *Hocker,* 268 F. Supp. 1004 (D. C. Nev. 1967) (based on equal protection); *Hill* v. *Holman,* 255 F. Supp. 924 (D. C. M. D. Ala. 1966) (based on due process). In the federal regime, the matter of credit is governed by statute, 18 U. S. C. § 3568.

Most States do permit increased sentencing on retrial without limit, *Ex parte Barnes,* 44 Ala. App. 329, 208 So. 2d 238 (1968); *Kohlfuss* v. *Warden of Connecticut State Prison,* 149 Conn. 692, 183 A. 2d 626 (1962); *Bohannon* v. *District of Columbia,* 99 A. 2d 647 (D. C. Mun. Ct. App. 1953); *Salisbury* v. *Grimes,* 223 Ga. 776, 158 S. E. 2d 412 (1967); *State* v. *Kneeskern,* 203 Iowa 929, 210 N. W. 465 (1926); *State* v. *Morgan,* 145 La. 585, 82 So. 711 (1919); *State* v. *Young,* 200 Kan. 20, 434 P. 2d 820 (1967); *Hobbs* v. *State,* 231 Md. 533, 191 A. 2d 238 (1963); *Moon* v. *State,* 250 Md. 468, 243 A. 2d 564 (1968); *Hicks* v. *Commonwealth,* 345 Mass. 89, 185 N. E. 2d 739 (1962); *Sanders* v. *State,* 239 Miss. 874, 125 So. 2d 923 (1961); *Commonwealth ex rel. Wallace* v. *Burke,* 169 Pa. Super. 633, 84 A. 2d 254 (1951); *State* v. *Squires,* 248 S. C. 239, 149 S. E. 2d 601 (1966).

Some States go so far as to deny credit against the new sentence for time already served in prison under the former one. *People* v. *Starks,* 395 Ill. 567, 71 N. E. 2d 23 (1947); *McDowell* v. *State,* 225 Ind. 495, 76 N. E. 2d 249 (1947); *State* v. *King,* 180 Neb. 631, 144 N. W. 2d 438 (1966); *Morgan* v. *Cox,* 75 N. M. 472, 406 P. 2d 347 (1965); *State* v. *Meadows,* 216 Tenn. 678, 393 S. W. 2d 744 (1965).

of this procedure lies in relitigating the same issue on the same evidence before two different juries with a man's innocence or guilt at stake" "in the hope that they would come to a different conclusion." *Hoag* v. *New Jersey*, 356 U. S. 464, 474, 475 (WARREN, C. J., dissenting). "Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches." *Downum* v. *United States*, 372 U. S. 734, 736.

And finally, it prevents the State, following *conviction*, from retrying the defendant again in the hope of securing a greater penalty.

> "This case presents an instance of the prosecution being allowed to harass the accused with repeated trials and convictions on the same evidence, until it achieves its desired result of a capital verdict." *Ciucci* v. *Illinois*, 356 U. S. 571, 573 (DOUGLAS, J., dissenting).

It is the latter purpose which is relevant here, for in these cases the Court allows the State a second chance to retry the defendant in the hope of securing a more favorable penalty.

> "Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punish-

ment a second time, is the constitutional restriction of any value? . . .

"The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Ex parte Lange, supra,* at 173.

The Fourteenth Amendment would now prohibit North Carolina and Alabama, after trial, from retrying or resentencing these defendants in the bald hope of securing a more favorable [5] verdict. *Benton* v. *Maryland, post,* p. 784. But here, because these defendants were successful in appealing their convictions, the Court allows those States to do just that. It is said that events subsequent to the first trial [6] may justify a new and greater sentence. Of course that is true. But it is true, too, in *every* criminal case. Does that mean that the State should be allowed to reopen every verdict and readjust every sentence by coming forward with new evidence concerning guilt and punishment? If not, then why should it be allowed to do so merely because the defendant has taken the initiative in seeking an error-free trial? It is doubtless true that the State has an interest in adjusting sentences up-

---

[5] "In *Swaim* v. *United States,* 165 U. S. 553, this Court held that the President or commanding officer had power to return a case to a court-martial for an increase in sentence. If the double jeopardy provisions of the Fifth Amendment were applicable such a practice would be unconstitutional." *Reid* v. *Covert,* 354 U. S. 1, 37–38, n. 68 (opinion of BLACK, J.).

[6] To rely on information that has developed after the initial trial gives the Government "continuing criminal jurisdiction" to supplement its case against the defendant, far beyond the cut-off date set by its original prosecution. Consider the defendant whose sentence on retrial is enlarged because of antisocial acts committed in prison. To increase his sentence on that original offense because of wholly subsequent conduct is indirectly to hold him criminally responsible for that conduct.

ward when it discovers new evidence warranting that result. But the individual has an interest in remaining free of double punishment. And in weighing those interests against one another, the Constitution has decided the matter in favor of the individual. See *United States* v. *Tateo,* 377 U. S. 463, 475 (Goldberg, J., dissenting).

MR. JUSTICE BLACK, concurring in part and dissenting in part.

Respondent Pearce was convicted in a North Carolina court of assault with intent to rape and sentenced to serve 12 to 15 years in prison; respondent Rice pleaded guilty to four charges of burglary and was sentenced in an Alabama court to serve a total of 10 years. After having served several years, Pearce was granted a new trial because a confession used against him was held to have been obtained in violation of his constitutional right not to be compelled to be a witness against himself; Rice's conviction was set aside because, although he was indigent, he had not been provided with a court-appointed lawyer at the time he made his guilty plea. Both respondents were retried and again convicted.[1] Rice's sentence was increased to 25 years, and no credit was given for time he had previously served; Pearce was in effect given a sentence of 15 years, but since credit was allowed for the time he had already served, his new sentence was set at eight years.

I agree with the Court that the Double Jeopardy Clause prohibits the denial of credit for time already served. I also agree with the Court's rejection of respondents' claims that the increased sentences violate the Double Jeopardy and Equal Protection Clauses of the Constitution. It has been settled, as the Court cor-

---

[1] At Rice's second trial one of the four charges originally pressed against him was dropped, and he was tried only on the remaining three.

rectly notes, that the double jeopardy provision does not limit the length of the sentence imposed upon reconviction. Nor is there any invidious discrimination in subjecting defendants who have had prior convictions set aside to the same punishment faced by people who have never been tried at all. Those who have had former convictions set aside must, like all others who have been convicted, be sentenced according to law, and a trial judge will normally conduct a full inquiry into the background, disposition, and prospects for rehabilitation of each defendant in order to set the appropriate sentence. Accordingly, these defendants are not denied equal protection when the State makes no provision for re-evaluation of sentences generally but permits the penalty set after retrials to be whatever penalty the trial judge finds to be appropriate, whether it be higher or lower than the sentence originally set.

The Court goes on, however, to hold that it would be a flagrant violation of due process for a "state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." *Ante,* at 723–724. This means, I take it, that a State cannot permit appeals in criminal cases and at the same time make it a crime for a convicted defendant to take or win an appeal. That would plainly deny due process of law, but not, as the Court's opinion implies, because the Court believes it to be an "unfair" practice. In the first place, the very enactment of two statutes side by side, one encouraging and granting appeals and another making it a crime to win an appeal, would be contrary to the very idea of government by law. It would create doubt, ambiguity, and uncertainty, making it impossible for citizens to know which one of the two conflicting laws to follow, and would thus violate one of

the first principles of due process. Due process, moreover, is a guarantee that a man should be tried and convicted only in accordance with valid laws of the land. If a conviction is not valid under these laws, statutory and constitutional, a man has been denied due process and has a constitutional right to have the conviction set aside, without being deprived of life, liberty, or property as a result. For these two reasons, I agree that a state law imposing punishment on a defendant for taking a permissible appeal in a criminal case would violate the Due Process Clause, but not because of any supposed "unfairness." Since such a law could take effect not only by state legislative enactment but also by state judicial decision, I also agree that it would violate the Constitution for any judge to impose a higher penalty on a defendant solely because he had taken a legally permissible appeal.

On this basis there is a plausible argument for upholding the judgment in No. 418 setting aside the second sentence of respondent Rice, since the District Judge there found it "shocking" to him that the State offered no evidence to show why it had so greatly increased Rice's punishment—namely, from a 10-year sentence on four burglary charges at the first trial to a 25-year sentence on three burglary charges at the second trial. From these circumstances, the Federal District Judge appeared to find as a fact that the sentencing judge had increased Rice's sentence for the specific purpose of punishing Rice for invoking the lawfully granted post-conviction remedies. Since at this distance we should ordinarily give this finding the benefit of every doubt, I would accept the Federal District Judge's conclusion that the State in this case attempted to punish Rice for lawfully challenging his conviction and would therefore, with some reluctance, affirm the decision of the Court of Appeals in that case. But this provides no

basis for affirming the judgment of the Court of Appeals in No. 413, the case involving respondent Pearce. For in that case there is not a line of evidence to support the slightest inference that the trial judge wanted or intended to punish Pearce for seeking post-conviction relief. Indeed the record shows that this trial judge meticulously computed the time Pearce had served in jail in order to give him full credit for that time.[2]

The Court justifies affirming the release of Pearce in this language:

> "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Ante,* at 726.

Of course nothing in the Due Process Clause grants this Court any such power as it is using here. Punishment based on the impermissible motivation described by the Court is, as I have said, clearly unconstitutional, and

---

[2] At the time of sentencing after Pearce's second trial, the judge stated:

"It is the intention of this Court to give the defendant a sentence of fifteen years in the State Prison; however, it appears to the Court from the records available from the Prison Department that the defendant has served 6 years, 6 months and 17 days flat and gain time combined, and the Court in passing sentence in this case is taking into consideration the time already served by the defendant. IT IS THE JUDGMENT of this Court that the defendant be confined to the State's Prison for a period of eight years."

courts must of course set aside the punishment if they find, by the normal judicial process of fact-finding, that such a motivation exists. But, beyond this, the courts are not vested with any general power to prescribe particular devices "[i]n order to assure the absence of such a motivation." Numerous different mechanisms could be thought of, any one of which would serve this function. Yet the Court does not explain why the particular detailed procedure spelled out in this case is *constitutionally* required, while other remedial devices are not. This is pure legislation if there ever was legislation.

I have no doubt about the power of Congress to enact such legislation under § 5 of the Fourteenth Amendment, which reads:

> "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

But should Congress enact what the Court has here enacted, a requirement that state courts articulate their reasons for imposing particular sentences, it would still be legislation only, and Congress could repeal it. In fact, since this is only a rule supplementing the Fourteenth Amendment, the Court itself might be willing to accept congressional substitutes for this supposedly "constitutional" rule which this Court today enacts. So despite the fact that the Court says that the judge's reasons "must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal," I remain unconvinced that this Court can legitimately add any additional commands to the Fourteenth or any other Amendment.

Apart from this, the possibility that judicial action will be prompted by impermissible motives is a particularly poor reason for holding that detailed rules of procedure are constitutionally binding in every state and federal

prosecution. The danger of improper motivation is of course ever present. A judge *might* impose a specially severe penalty solely because of a defendant's race, religion, or political views. He *might* impose a specially severe penalty because a defendant exercised his right to counsel, or insisted on a trial by jury, or even because the defendant refused to admit his guilt and insisted on any particular kind of trial. In all these instances any additional punishment would of course be, for the reasons I have stated, flagrantly unconstitutional. But it has never previously been suggested by this Court that "[i]n order to assure the absence of such a motivation," this Court could, as a matter of constitutional law, direct all trial judges to spell out in detail their reasons for setting a particular sentence, making their reasons "affirmatively appear," and basing these reasons on "objective information concerning identifiable conduct." Nor has this Court ever previously suggested in connection with sentencing that "the factual data . . . must be made part of the record." On the contrary, we spelled out in some detail in *Williams* v. *New York,* 337 U. S. 241 (1949), our reasons for refusing to subject the sentencing process to any such limitations, which might hamstring modern penological reforms, and the Court has, until today, continued to reaffirm that decision. See, *e. g., Specht* v. *Patterson,* 386 U. S. 605 (1967). There are many perfectly legitimate reasons that a judge might have for imposing a higher sentence. For instance, take the case of respondent Rice. Without a lawyer, he pleaded guilty to four charges of burglary and received a sentence of only 10 years. Although not shown by the record, what happened is not difficult to see. It is common knowledge that prosecutors frequently trade with defendants and agree to recommend low sentences in return for pleas of guilty. Judges frequently accept such agreements without carefully scru-

tinizing the record of the defendant. One needs little imagination to infer that Rice's original sentence was the result of precisely such a practice. This explains both the first 10-year sentence and the fact that, after a full trial and examination of the entire record, the trial judge concluded that a 25-year sentence was called for. The Court's opinion today will—unfortunately, I think, for defendants—throw stumbling blocks in the way of their making similar beneficial agreements in the future. Moreover, the Court's opinion may hereafter cause judges to impose heavier sentences on defendants in order to preserve their lawfully authorized discretion should defendants win reversals of their original convictions.

I would firmly adhere to the *Williams* principle of leaving judges free to exercise their discretion in sentencing. I would accept the finding of fact made by the Federal District Judge in No. 418, that the higher sentence imposed on respondent Rice was motivated by constitutionally impermissible considerations. But I would not go further and promulgate detailed rules of procedure as a matter of constitutional law, and since there is no finding of actually improper motivation in No. 413, I would reverse the judgment of the Court of Appeals in that case and reinstate the second sentence imposed upon respondent Pearce.

One last thought. There are some who say that there is nothing but a semantic difference between my view—that the Due Process Clause guarantees only that persons must be tried pursuant to the Constitution and laws passed under it—and the opposing view—that the Constitution grants judges power to decide constitutionality on the basis of their own concepts of fairness, justice, or "the Anglo-American legal heritage." *Sniadach* v. *Family Finance Corp., ante,* at 343 (HARLAN, J., concurring). But in this case and elsewhere, as I see it, the difference between these views comes to nothing less than the dif-

ference between what the Constitution says and means and what the judges from day to day, generation to generation, and century to century, decide is fairest and best for the people. Deciding that an ambiguous or self-contradictory law violates due process is a far cry from holding that a law violates due process because it is "unfair" or "shocking" to a judge or violates "the Anglo-American legal heritage." A due process criminal trial means a trial in a court, with an independent judge lawfully selected, a jury, a defendant's lawyer if the defendant wants one, a court with power to issue compulsory process for witnesses, and with all the other guarantees provided by the Constitution and valid laws passed pursuant to it. See, *e. g.*, *Chambers* v. *Florida,* 309 U. S. 227, 235–237, 240–241 (1940); *Toth* v. *Quarles,* 350 U. S. 11 (1955). That is the difference for me between our Constitution as *written* by the Founders and an unwritten constitution to be formulated by judges according to their ideas of fairness on a case-by-case basis. I therefore must dissent from affirmance of the judgment in the case of respondent Pearce.

Mr. Justice Harlan, concurring in part and dissenting in part.

Were these cases to be judged entirely within the traditional confines of the Due Process Clause of the Fourteenth Amendment, I should, but not without some difficulty, find myself in substantial agreement with the result reached by the Court. However, the Court today, in *Benton* v. *Maryland, post,* p. 784, has held, over my dissent, that the Double Jeopardy Clause of the Fifth Amendment is made applicable to the States by the Fourteenth Amendment Due Process Clause. While my usual practice is to adhere until the end of Term to views I have expressed in dissent during the Term, I believe I should not proceed in these important cases as if *Benton* had turned out otherwise.

Given *Benton,* it is my view that the decision of this Court in *Green* v. *United States,* 355 U. S. 184 (1957), from which I dissented at the time, points strongly to the conclusion, also reached by my Brother DOUGLAS, *ante,* p. 726, that the Double Jeopardy Clause of the Fifth Amendment governs *both* issues presently decided by the Court. Accordingly, I join in Part I of the Court's opinion, and concur in the result reached in Part II, except in one minor respect.[1]

*Green* v. *United States, supra,* held in effect that a defendant who is convicted of a lesser offense included in that charged in the original indictment, and who thereafter secures reversal, may be retried only for the lesser included offense. Mr. Justice Frankfurter observed, in a dissent which I joined, that:

> "As a practical matter, and on any basis of human values, it is scarcely possible to distinguish a case in which the defendant is convicted of a greater offense from one in which he is convicted of an offense that has the same name as that of which he was previously convicted but carries a significantly [increased] . . . punishment . . . ." *Id.,* at 213.

Further reflection a decade later has not changed my view that the two situations cannot be meaningfully distinguished.

---

[1] An outright affirmance in No. 413 would carry the consequence of relieving the respondent Pearce from serving the remaining few months of his original state sentence. See the Court's opinion, *ante,* at 713–714 and n. 1. There is no basis, whether the result in this case is governed by due process or double jeopardy, for such an interference with the State's legitimate criminal processes. I would therefore vacate the judgment of the Court of Appeals for the Fourth Circuit in No. 413 and remand the case so that an order may be entered releasing Pearce at, but not before, the expiration of his first sentence. Cf. *Peyton* v. *Rowe,* 391 U. S. 54 (1968).

Every consideration enunciated by the Court in support of the decision in *Green* applies with equal force to the situation at bar. In each instance, the defendant was once subjected to the risk of receiving a maximum punishment, but it was determined by legal process that he should receive only a specified punishment less than the maximum. See *id.*, at 190. And the concept or fiction of an "implicit acquittal" of the greater offense, *ibid.*, applies equally to the greater sentence: in each case it was determined at the former trial that the defendant or his offense was of a certain limited degree of "badness" or gravity only, and therefore merited only a certain limited punishment. Most significantly, perhaps, in each case a contrary rule would place the defendant considering whether to appeal his conviction in the same "incredible dilemma" and confront him with the same "desperate" choice. *Id.*, at 193. His decision whether or not to appeal would be burdened by the consideration that success,[2] followed by retrial and conviction, might place him in a far worse position than if he remained silent and suffered what seemed to him an unjust punishment.[3] In terms of *Green,* that the imposition of a more severe sentence on retrial is a matter of pure *chance,* rather than the result of purposeful retaliation for having taken an appeal, renders the choice no less "desperate."

If, as a matter of policy and practicality, the imposition of an increased sentence on retrial has the same consequences whether effected in the guise of an increase

---

[2] A prohibition against enhanced punishment on retrial does not, of course, tend in any manner to encourage frivolous appeals. A contrary rule does not discourage frivolous appeals, except insofar as it discourages *all* appeals.

[3] The would-be appellant's quandary is most clearly seen when the first trial and conviction for a capital offense result in a sentence of life imprisonment. Cf., *e. g., Green* v. *United States, supra.*

in the degree of offense or an augmentation of punishment, what other factors render one route forbidden and the other permissible under the Double Jeopardy Clause? It cannot be that the provision does not comprehend "sentences"—as distinguished from "offenses"—for it has long been established that once a prisoner commences service of sentence, the Clause prevents a court from vacating the sentence and then imposing a greater one. See *United States* v. *Benz,* 282 U. S. 304, 306–307 (1931); *Ex parte Lange,* 18 Wall. 163, 168, 173 (1874).

The Court does not suggest otherwise,[4] but in its view, apparently, when the conviction itself and not merely the consequent sentence has been set aside, or when either has been set aside at the defendant's behest,[5] the "slate *has* been wiped clean," *ante,* at 721, and the Double Jeopardy Clause presents no bar to the imposi-

---

[4] Indeed, the Court relies on these cases in Part I of its opinion to hold that a prisoner must be afforded credit for time served pursuant to a subsequently vacated sentence.

[5] Neither *Lange* nor *Benz* indicates that the principle prohibiting the imposition of an enhanced sentence on the same judgment of conviction depends on whether the original sentence is vacated on the prisoner's application, or is set aside *sua sponte* by the court. (It appears, though not clearly, that Lange's sentence was set aside at his behest.)

In *Murphy* v. *Massachusetts,* 177 U. S. 155 (1900), however, the Court indicated that one who successfully moves to vacate his sentence occupies "the same posture as if he had sued out his writ of error on the day he was first sentenced, and the mere fact that by reason of his delay in doing so he had served a portion of the erroneous sentence could not entitle him to assert that he was being twice punished." *Id.,* at 161–162. Thus, the Court concluded in *Murphy* not only that the sentence could be augmented, but also that the petitioner was not constitutionally entitled to any credit for time served under the first sentence.

This proves too much, as the Court today holds in Part I of its opinion. In my view, neither conclusion survives *Green.*

tion of a sentence greater than that originally imposed. In support of this proposition, the Court relies chiefly on two cases, *Stroud* v. *United States,* 251 U. S. 15 (1919), and *United States* v. *Ball,* 163 U. S. 662 (1896). I do not believe that either of these cases provides an adequate basis for the Court's seemingly incongruous conclusion.

*Stroud* v. *United States, supra,* held that a defendant who received a life sentence for first-degree murder could, upon securing a reversal of the conviction, be retried for first-degree murder and sentenced to death. However, the opinion does not explicitly advert to the question whether the Double Jeopardy Clause bars the imposition of an increased punishment, and an examination of the briefs in that case confirms the doubt expressed by the Court of Appeals in *Patton* v. *North Carolina,* 381 F. 2d 636, 644 (1967), whether this question was squarely presented to the Court.[6] Assuming that *Stroud* stood for the proposition which the majority attributes to it, that decision simply cannot be squared with the subsequent decision in *Green* v. *United States,* 355 U. S. 184 (1957). See *id.,* at 213 (dissenting opinion); *People* v. *Henderson,* 60 Cal. 2d 482, 386 P. 2d 677 (1963).

The Court does not rest solely on this ambiguous and doubtful precedent, however. Its main point seems to be that to limit the punishment on retrial to that imposed at the former trial "would be to cast doubt upon the whole validity of the basic principle enunciated in

---

[6] Stroud pitched his double jeopardy claim on the theory that, although "the constitutional prohibition does not prevent a second trial after reversal in *non-capital* cases," it does—without reference to the sentence imposed—preclude "a second trial upon reversal of a conviction in a *capital case.*" Brief for Plaintiff in Error in No. 276, O. T. 1919, p. 32. Stroud's argument as to the enhanced sentence appears based solely on nonconstitutional grounds. See *id.,* at 89 *et seq.*

*United States* v. *Ball,"* 163 U. S. 662 (1896), and its progeny. *Ante,* at 721.

*Ball* held, simply, that a defendant who succeeds in getting his first conviction set aside may thereafter be retried for the same offense of which he was formerly convicted. This is, indeed, a fundamental doctrine in our criminal jurisprudence, and I would be the last to undermine it. But *Ball* does not speak to the question of what *punishment* may be imposed on retrial. I entirely fail to understand the Court's suggestion, unless it assumes that *Ball* must stand or fall on the question-begging notion that, to quote the majority today, "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean."[7] *Ante,* at 721.

In relying on this conceptual fiction, the majority forgets that *Green* v. *United States, supra,* prohibits the imposition of an increased punishment on retrial precisely *because* convictions are usually set aside only at the defendant's behest, and not in spite of that fact. 355 U. S., at 193–194; *supra,* at 746: the defendant's choice to appeal an erroneous conviction is protected by the rule that he may not again be placed in jeopardy of suffering the greater punishment not imposed at the

---

[7] This fiction would seem to lead to a result which even the majority might have difficulty reconciling with the Double Jeopardy Clause's prohibition of multiple punishment. Consider the situation of a defendant who successfully vacates a conviction and is then retried and convicted after he has fully served the sentence first imposed. See *Street* v. *New York,* 394 U. S. 576 (1969); *Sibron* v. *New York,* 392 U. S. 40 (1968); *Ginsberg* v. *New York,* 390 U. S. 629 (1968). Although the sentence was fully served, the defendant himself has caused the judgment to be vacated, and the majority's "nullification" principle would seem to allow the judge to impose a new sentence of imprisonment on him—so long as the new sentence was an "increased" sentence rather than the result of the court's failure to "credit" the defendant with the sentence he had completed.

first trial. Moreover, in its exaltation of form over substance and policy, the Court misconceives, I think, the essential principle of *Ball* itself:

> "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States* v. *Tateo,* 377 U. S. 463, 466 (1964).

To be sure, this societal interest is compromised to a degree if the second judge is forbidden to impose a greater punishment on retrial than was meted out at the first trial. For example, new facts may develop between the first and second trial which would, as an initial matter, be considered in aggravation of sentence. By the same token, however, the prosecutor who was able to prove only second-degree murder at the former trial might improve his case in the interim and acquire sufficient evidence to prove murder in the first degree. In either instance, if one views the second trial in a vacuum, the defendant has received less punishment than is his due. But in both cases, the compromise is designed to protect other societal interests, and it is, after *Green,* a compromise compelled by the Double Jeopardy Clause.[8]

---

[8] That the new facts may consist of misdeeds committed by the defendant since the first trial, rather than prior misconduct only subsequently discovered, should not, in my view, alter the outcome

I therefore conclude that, consistent with the Fifth Amendment, a defendant who has once been convicted and sentenced to a particular punishment may not on retrial be placed again in jeopardy of receiving a greater punishment than was first imposed. Because the Double Jeopardy Clause has now been held applicable to the States, *Benton* v. *Maryland, supra,* I would affirm the judgment of the Court of Appeals in No. 418, and vacate and remand in No. 413, so that respondent Pearce may finish serving his first, valid sentence. See n. 1, *supra.*

MR. JUSTICE WHITE, concurring in part.

I join the Court's opinion except that in my view Part II–C should authorize an increased sentence on retrial based on any objective, identifiable factual data not known to the trial judge at the time of the original sentencing proceeding.

---

under *Green* and the other double jeopardy cases. If subsequent misdeeds amount to criminal violations, the defendant may properly be tried and punished for them. If they amount to something less, the very uncertainty as to what kinds of noncriminal conduct may be considered in aggravation of the sentence on retrial would, analytically, seem to thwart the concerns protected by *Green.* In either event, I do not understand what rational policy distinguishes a defendant whose appeal is successful from one who takes no appeal and whose sentence may not, consistent with the Double Jeopardy Clause, be augmented. See *supra,* at 747.

Of course, nothing in the Double Jeopardy Clause forbids a prosecutor from introducing new and harmful evidence at the second trial in order to improve his chances of obtaining a conviction for the lesser offense of which the defendant was previously convicted or to assure that the defendant receives the full punishment imposed at the first trial.