| County | Population | Ratio of Representation (For One Delegate) | Delegate Entitlement | Delegate Apportionment | Population Per Delegate | % Deviation From Population–Delegate Equality |
|---|---|---|---|---|---|---|
| Fayette | 48,127 | `\\` | 2.77 | 3 | 16,042 | + 7.7% |
| Logan | 46,885 | `\\` | 2.70 | 3 | 15,628 | + 10% |
| Marion | 59,943 | `\\` | 3.45 | 3 | 19,981 | − 15% |
| McDowell | 51,462 | `\\` | 2.96 | 3 | 17,154 | + 1.3% |
| Monongalia | 51,888 | `\\` | 2.99 | 3 | 17,296 | + .3% |
| Berkeley | 37,042 | `\\` | 2.64 | 3 | 15,245 | + 8.7% |
| Morgan | 8,693 | | | | | |
| | 45,735 | | | | | |
| Harrison | 73,334 | `\\` | 4.22 | 4 | 18,334 | − 5.5% |
| Mercer | 62,069 | `\\` | 3.58 | 4 | 15,623 | − 10.5% |
| Ohio | 62,493 | `\\` | 3.60 | 4 | 15,623 | − 10% |
| Raleigh | 70,435 | `\\` | 4.06 | 4 | 17,609 | − 1.5% |
| Wood | 88,063 | `\\` | 5.07 | 5 | 17,613 | − 1.4% |
| Cabell | 103,520 | `\\` | 5.97 | 6 | 17,253 | + .5% |
| Kanawha | 232,091 | `\\` | 13.38 | 13 | 17,853 | − 3.0% |

Martin V. **PENDERGRASS**

v.

**W. S. NEIL, Warden, Tennessee State Penitentiary.**

**Civ. No. 6043.**

United States District Court, M. D. Tennessee, Nashville Division.

April 1, 1971.

John W. Wagster, Nashville, Tenn., for petitioner.

David Pack, Atty. Gen., and R. Jackson Rose, Asst. Atty. Gen., State of Tenn., Nashville, Tenn., for respondent.

## ORDER

FRANK GRAY, Jr., Chief Judge.

Petitioner is presently confined in the Tennessee State Penitentiary at Nashville, Tennessee. There he is serving a one-year sentence, which was imposed by the Criminal Court of Hickman County, Tennessee, following his 1968 conviction of manslaughter. It is his contention that his present incarceration is illegal, and, in consequence, he has filed a petition for the writ of habeas corpus. The merits of his petition are herein under consideration.

Prior to the 1968 conviction referred to above, petitioner was tried in the same court on the same charge. This prior proceeding also culminated in a verdict of guilty, but a sentence of eleven months and twenty-nine days was imposed. Petitioner's motion for a new trial was denied by the trial judge, and he consequently took an appeal to the Court of Criminal Appeals of Tennessee. For reasons which do not appear in the record presently before this court, the Court of Criminal Appeals of Tennessee upheld petitioner's appeal, voided his conviction, and ordered that he be retried. It was upon petitioner's conviction in the ordered new trial that his present sentence of one year was imposed, and it is, of course, the imposition of a longer sentence the second time around—albeit the second sentence is longer than the first by the span of only one day—of which petitioner presently complains.

 In his *pro se* petition, Mr. Pendergrass contends that if a defendant is convicted and sentenced in a state criminal proceeding, but prosecutes a successful appeal therefrom, is tried again, is convicted again, and is again sentenced, then such a defendant has an absolute right not to have a longer sentence imposed upon him as a result of his second conviction than he would have had, had his original sentence been allowed to stand. He asserts that ". . . this right have [sic] become so fundamental that it need[s] no . . .

[supporting] argument." Quite clearly such an assertion is an incorrect statement of the law.

In the case of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court of the United States held explicitly that neither the double jeopardy clause of the Fifth Amendment nor the equal protection clause of the Fourteenth Amendment prohibits the imposition of a longer sentence upon retrial. Nevertheless, *Pearce* also held that

> "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the *fear* of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Pearce, supra*, at 725, 89 S.Ct. at 2080 (emphasis added).

"In order to assure the absence of such a motivation . . .," *Pearce, supra*, at 726, 89 S.Ct. at 2081, the Court went on to promulgate a clear, explicit, and unqualified standard which must be complied with whenever a more severe sentence is imposed the second time around:

> ". . . whenever a judge imposes a more severe sentence upon a defendant after a new trial, *the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record,* so that the constitutional legitimacy of the increased sentence may be fully re-

viewed on appeal." *Id.* (emphasis added).

Respondent vigorously insists that *Pearce* does not apply in the case of the instant petitioner, because, he contends, that decision speaks only to the sentencing "judge," whereas, in Tennessee, it is the jury, and not the trial judge, which actually passes sentence. This distinction is a substantial one, so respondent's argument runs, because the element of possible vindictiveness is not—and, in fact, cannot be—a factor in resentencing in this state. Britt v. State, 455 S.W.2d 625 (Ct.Crim.App.Tenn.1969), certiorari denied June 15, 1970.

This court is of the opinion that respondent's argument is unsound. It is made clear, both by the explicit language of *Pearce* and by the obvious policy considerations which constitute its *ratio decidendi,* that the *Pearce* decision is concerned with the assuagement of the *fear* of possible vindictiveness—*regardless* of whether such fear is in fact warranted by actual resentencing practices in a given jurisdiction. It is obvious that the possibility of incurring a longer sentence on retrial, either as a result of vindictive resentencing practices or merely as the result of happenstance, exerts a chilling effect upon a defendant's inclination to embark upon whatever appellate routes may ostensibly be "open" to him. The existence of such a possibility places an unjustly-convicted defendant in the anomalous and unfair predicament of having to run the risk of a harsher sentence merely to obtain that to which he was constitutionally entitled in the beginning—*viz.,* a fair and error-free trial. It is thus manifest that the broad principles of due process which underlie the *Pearce* decision apply as forcefully to resentencing by a jury as they do to resentencing by a judge.

■ Over and above the foregoing considerations, however, the *Pearce* standard applies to the Tennessee sentencing procedure by force of precedent in this jurisdiction. In the case of Pinkard v. Neil, 311 F.Supp. 711 (M.D.

Tenn.1970), Judge Miller—then Chief Judge of this court, now a judge of the Court of Appeals for this Circuit—expressly so held, stating that ". . . it would appear not incompatible with Tennessee practice for the judge to charge the jury, as a matter of law, that any sentence imposed upon a particular defendant could not be greater than that imposed upon him at an earlier trial for the same offense, whatever that term may have been, if no evidence of supervening [mis]conduct were offered at the second trial. . . . Once the Supreme Court has stated that, as a matter of law, a defendant cannot be given an increased sentence upon retrial unless there is affirmative evidence of [mis]-conduct subsequent to the first trial, then it becomes the duty of the judge to follow that decision either in imposing sentence himself in states following the federal practice which charges the judge with this responsibility, or in properly charging the jury in states following the Tennessee practice." *Pinkard, supra,* at 714.

Respondent urges this court to ignore the *Pinkard* ruling in reaching its decision in the case at bar. He contends, first, that *Pinkard* was incorrectly decided and that *Pearce* should not, in fact, be applied to the Tennessee sentencing procedure for the reasons stated in *Britt, supra*; and he contends, second, that the jury-charging procedure suggested in *Pinkard* would be impossible of implementation under the present Tennessee rules of procedure. This court finds no merit in either contention and would indeed, as above indicated, have applied *Pearce* to the Tennessee sentencing procedure, on the basis of broad considerations of due process, even in the absence of the ruling in *Pinkard*. If, however, this were not so and this court did not agree with the *Pinkard* result, the fact remains that the *Pinkard* holding stands as the law in this jurisdiction. This being the case, in the absence of circumstances not present in the instant situation, this court feels it must adhere to the principle of *stare decisis* and is of the opinion that, should *Pinkard* be overruled, such action could appropriately be taken only by an appellate court. It follows that *Pearce* is the standard by which this court must gauge the constitutionality of the instant petitioner's sentence.

Given the fact that *Pearce* applies to the Tennessee sentencing procedure, it was apparent to this court, upon its initial consideration of petitioner's *pro se* petition, that, although it was premised upon a misunderstanding of the effect of the *Pearce* holding, it nonetheless contained allegations which, if true, were sufficient to raise serious questions as to the constitutionality of petitioner's present confinement. Accordingly, by order of this court entered February 4, 1971, it was directed that the writ issue, that counsel be appointed, and that petitioner be brought before this court at an appointed time for a hearing. The aforesaid order specified three questions which were to be considered at such hearing: (1) whether petitioner had, in fact, exhausted his available state remedies as is required by 28 U.S.C. § 2254;[1] (2) whether the record of petitioner's second trial showed justification, within the meaning of the *Pearce* decision, for the imposition of a longer sentence as a result of that trial; and (3) whether the second sentence of one year was, in actual fact, more severe than petitioner's previous one of eleven months and twenty-nine days.

The hearing was held as ordered, and, in connection therewith, certain stipulations were entered into by the parties. Among these were (a) a stipulation as to the correctness of the allegations in the petition concerning the circumstances of petitioner's present

---

1. The order also specified for consideration the question of whether, if petitioner had, in fact, failed to present the same question herein at issue to the courts of Tennessee, he was not effectively precluded from pursuing any remedy at all, by virtue of the holding in Britt, supra.

confinement (these facts are substantially as reiterated above with regard to the history of petitioner's state criminal proceedings), (b) a stipulation that he has in fact exhausted his available state remedies, and (c) a stipulation that the record of petitioner's second trial contains none of the affirmative data required by *Pearce* as justification for the imposition of a more severe sentence following petitioner's second conviction. Thus the first two of the three questions, *supra*, which were set for consideration at the hearing were disposed of by stipulation. The court then heard argument by petitioner's counsel on the question of whether petitioner's second sentence was in fact more severe than his first. Respondent offered no rebuttal to such argument. This court then took the case under advisement, and, having given the matter consideration, is of the opinion that petitioner's present incarceration is repugnant to the Constitution of the United States.

If one looks only to the relative lengths of petitioner's two sentences— one day's difference—one may be inclined to feel that he is making much ado about nothing and is, as it were, attempting to ride to freedom on the back of a *de minimis* technical flaw of which the court should rightly refuse to take cognizance. For reasons which will be considered in some detail below, it turns out that this is not the case. Even, however, if it were true that petitioner is worse off only by the length of twenty-four hours for having been retried, this court is of the opinion that that difference, small though it is, would compel a holding that petitioner's present imprisonment is constitutionally illegal.

In the *Pinkard* case, *supra*, the difference between the petitioner's two sentences was a matter of seventy-nine years, as contrasted to the instant petitioner's one day. Yet, given that *Pearce* applies in Tennessee, its requirements are categorical and clearly must be complied with in *any* resentencing proceeding. Thus, the standard of fairness to which the instant petitioner's sentence

must conform is exactly the same as that by which Pinkard's second sentence was measured, and the legality or illegality of the second sentence in each case is determined, not by the additional length of the second sentence over the first, but, rather, by whether or not the sentence in question meets the *Pearce* requirements. If a second sentence imposed following a retrial in state court fails to meet these requirements, it is constitutionally illegal. And it cannot be shielded from the Fourteenth Amendment on the ground that it is so "only a little bit."

Be that as it may, however, a closer examination into exactly what is entailed by this petitioner's second sentence, as contrasted to his first, reveals that far more is involved than a mere one day in confinement. As noted above, the sentence imposed upon petitioner's void conviction was for a term of eleven months and twenty-nine days, whereas, that imposed upon his retrial was for a term of one year. T.C.A. § 39–2411 provides that the offense of involuntary manslaughter shall be punished by confinement in the penitentiary for not less than one year nor more than five years. However, T.C.A. § 40–2703 furnishes an exception to the foregoing provision by permitting a jury, in a felony case in which it feels a sentence of less than one year is warranted, to impose a sentence upon a felony conviction of less than one year. Under this provision, such a sentence must be served in the appropriate county workhouse, whereas, a sentence of one year or more must be served in the penitentiary. Thus the imposition of the additional day in this petitioner's case meant automatically that he would serve his time in the penitentiary instead of the county workhouse. Petitioner contends that, in reality, this fact alone renders his second sentence more severe than his first, because incarceration in the penitentiary carries with it far greater stigma, in the eyes of society, than does service of a term in the local workhouse. More specifically, he contends, "[t]he general

public consider[s] a convict . . . [from] a penitentiary to be more hardened, dangerous, and inherently evil than it does the inmate of a county jail or workhouse. Therefore, ex-penitentiary convicts find it more difficult to gain employment and to be reinstated in society." This court is of the opinion that such a view is in large part correct. Moreover, as petitioner points out, the fact that an individual serves time in the penitentiary burdens him with various statutory disabilities which, under Tennessee law, do not result from service of a term in the county workhouse. Thus, for example, "[t]he effect of a sentence of imprisonment in the penitentiary is to put an end to the right of the convict to execute the office of executor, administrator, or guardian, and operates as a removal from office." T.C.A. § 40–2715. On the other hand, a sentence to the county jail or workhouse entails no such consequences. T.C.A. § 36–801 provides that if an individual is convicted of a felony, as is the offense of manslaughter,[2] a sentence to serve time in the penitentiary imposed upon such conviction constitutes grounds for absolute divorce. This is not the case when the *convict is*, as the instant petitioner originally was, sentenced to a term in the local workhouse or county jail.

It is also apparent that, under the law of Tennessee, a sentence to the county workhouse may be served in a manner tailored to the needs and circumstances of an individual prisoner, thus allowing less isolation from the free community and a greater chance for rehabilitation. If, for example, he is sentenced to confinement in the county jail or workhouse, " . . . the judge of the court in which the sentence is imposed may, in his discretion, include in the order of judgment suitable provisions and directions to the officer to whose custody the prisoner is committed for safekeeping as will insure that the convicted person will be allowed to serve his sentence on nonconsecutive days which may include but is not limited to weekends. . . ." T. C.A. § 40–2719. As petitioner points out, "[t]his allows workhouse prisoners who are no threat to society to be permitted to live at home, maintain their jobs, and support their families. . . ." Or, if such an order is not entered by the judge of the court in which a workhouse prisoner is sentenced, the prisoner may, upon proper application to the supervisory authorities of such institution, be permitted ". . . to leave the workhouse during necessary and reasonable hours for the purpose of working at his employment, conducting his own business or other self-employed occupation. . . ." T.C.A. § 41–1238. Though the remaining portion of the foregoing provision is somewhat ambiguously worded, it is most reasonably construed as also permitting such prisoners to leave the workhouse for the purposes of attempting to find employment, seeking medical attention, and attending educational institutions. If a

---

**2.** T.C.A. 39–103 provides, in pertinent part, as follows:

"*Felonies and misdemeanors distinguished.*—All violations of law punished by imprisonment in the penitentiary . . . are, and shall be denominated, felonies, and all violations of law punished by fine or imprisonment in the county jail or workhouse . . . shall be denominated misdemeanors." While such is probably not the case, it is at least arguable that difference in the place of service of his sentence could have the effect of reducing petitioner's offense from a felony to a misdemeanor, if the sentence were served in the workhouse, and such a possibility looms very real, should the courts of a state other than Tennessee

ever be called upon to construe T.C.A. § 39–103 as it applies to this petitioner. The problem, of course, is whether the term "punished," as it appears in the statute, means "actually punished" as opposed to "punishable." If it were construed to mean the former, as well it might be, the effect would indeed be to reduce petitioner's crime to a misdemeanor, should his former sentence of eleven months and twenty-nine days be reinstated. In this connection, see 23 Vanderbilt Law Review, "Special Project: The Collateral Consequences of a Criminal Conviction," for an exhaustive discussion of the ramifications of felony convictions in the United States.

workhouse prisoner is permitted to leave the institution for the purpose of engaging in an occupation, such employment may be in a county other than that to whose workhouse he was committed. T.C.A. § 41–1241. *See generally* T.C.A. §§ 41–1237 through 41–1252. This flexibility in the service of a prisoner's term in the workhouse is not available to one whose sentence must be served in the penitentiary.

In summary, even if the imposition of an additional twenty-four hours to a prisoner's original sentence as a result of a conviction following retrial were too trivial to require application of the *Pearce* standard—a view which, as indicated above, this court does not share—the conclusion would still be compelled that a sentence of one year served in the penitentiary is more severe than a sentence of eleven months and twenty-nine days served in the county workhouse. It follows that petitioner's present incarceration is illegal and that his petition for the writ of habeas corpus must be granted. Accordingly, it is ordered that he be released forthwith from the custody of the respondent subject to the right of the state to retry him if desired.