**Reuben Cornelious JOHNSON, Jr., Petitioner,**

v.

**L. W. SIMPSON, Jr., Sheriff, City of Lynchburg, Virginia, Respondent.**

Civ. A. No. 76–0038(L).

United States District Court,
W. D. Virginia,
Lynchburg Division.

Aug. 30, 1976.

Reuben Johnson, Jr., pro se.

Wilburn C. Dibling, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

The petitioner, Reuben Cornelious Johnson, Jr., has filed a petition for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. Mr. Johnson is currently serving an eight year sentence, pursuant to a judgment of the Circuit Court for the City of Lynchburg, imposed on July 29, 1975, for larceny. The conviction resulted after a trial by jury in which the petitioner, represented by court appointed counsel, entered a plea of not guilty.

Following the conviction, petitioner filed a petition for appeal with the Virginia Supreme Court, which denied and dismissed the petition in an order dated February 17, 1976.

Mr. Johnson makes the following allegations in his petition: (1) that he was twice placed in jeopardy for the same offense, (2) that racial discrimination took place in the selection of the jury, (3) that the eight year sentence imposed by the court constitutes cruel and unusual punishment, and (4) that petitioner's confinement at the Lynchburg City Jail constitutes cruel and unusual punishment. The respondents have answered and filed a motion for summary judgment, to which motion the petitioner has been given an opportunity to reply. Upon consideration of all the evidence of record, the court finds that there is no material fact in dispute and will enter judgment on each of petitioner's allegations.

With respect to the first allegation, petitioner asserts that, on May 14, 1975, he was arraigned before the Circuit Court for the City of Lynchburg on a charge of robbery, that he pleaded not guilty and that the court proceeded to hear the evidence. The circuit judge halted the proceedings after hearing all of the Commonwealth's evidence and ordered that petitioner be tried by a jury on a later date. On June 23, 1975, petitioner was again arraigned on that same charge, tried before a jury, found guilty and sentenced to an eight year term of incarceration. Petitioner asserts that his conviction is not valid because he was exposed to jeopardy at the first hearing.

The evidence of record clearly demonstrates, however, that, prior to petitioner's initial arraignment, counsel for petitioner and the Assistant Commonwealth's attorney met with the circuit court judge to seek his approval of a pre-trial agreement whereby the robbery charge would be reduced to petit larceny. The court refused to concur in such arrangement if the use of force was involved, so each party agreed to

let the judge hear the evidence and, if he determined that force was involved, he would halt the proceedings and set the case for jury trial at a later date. This was the procedure that was followed on May 14, 1975. When the judge determined that force was involved, he offered petitioner a jury trial and set the case for the June term. No objection to this procedure was noted by defense counsel and it was the understanding of all of the parties that the May 14th proceedings would not result in either conviction or acquittal, but simply in the approval of or disapproval of a plea bargaining arrangement.

■ The Constitution of the United States, Amendment V, provides "no person shall be subject for the same offense to be twice put in jeopardy of life and limb." Jeopardy means exposure to danger. A person is in legal jeopardy when he is placed on trial before a court of competent jurisdiction, on a valid indictment, is arraigned, and has pleaded to the charge. *Rosser v. Commonwealth,* 159 Va. 1028, 167 S.E. 257 (1933). The essential question for resolution by the court is whether the petitioner was placed on trial in the May 14, 1975 proceeding and whether he was exposed to danger within the meaning of the double jeopardy clause. The court finds that these questions must be answered in the negative.

In *Pearce v. North Carolina,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court helped to define the nature and scope of the Fifth Amendment guarantee against double jeopardy. That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense, *supra,* at 717, 89 S.Ct. 2072. In the case presently before this court, it is clear that petitioner's hearing before the circuit judge on May 14th, 1975 does not fall within any of the constitutional criteria set forth above. First, petitioner was not placed on

trial; the court simply agreed to hear the Commonwealth's evidence to determine whether or not it would approve a plea bargaining arrangement entered into between the prosecution and defense counsel. All parties knew and understood that the proceeding would not end in conviction and would only result in acquittal if the judge decided to go along with the plea bargain. As a result, the petitioner was not exposed to danger within the meaning of *Pearce, supra,* and was not placed twice in jeopardy when subsequently tried and convicted on June 23, 1975.

When the judge halted the proceedings in the first hearing, he took action which arguably constituted the declaration of a mistrial. As set forth in respondent's motion for summary judgment, the Supreme Court has held that a mistrial may be declared and a new trial ordered upon a showing of manifest necessity and a demonstration that the ends of public justice will be served. In such case, the second proceeding is not barred by the double jeopardy clause. *United States v. Wilson,* 420 U.S. 332, 344, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). When the judge indicated that he would not accept the plea bargain, there was no purpose in continuing with the case, and it was incumbent upon him to halt the proceedings and, in fairness to petitioner, grant him the opportunity to be tried at a later date by a jury. The ends of public justice were amply well served in this regard.

■ The court therefore rules that jeopardy did not attach at petitioner's pre-trial hearing where the judge heard evidence solely for the purpose of determining whether or not he would accept a plea-bargaining arrangement entered into between the parties.

Petitioner's second allegation states an objection to the composition of the jury which tried and convicted him of robbery on June 23, 1975. Mr. Johnson alleges that he is a 23 year old member of the black race, but that all of the members of the jury except one were white and at least twenty years older than himself. Petitioner cites 1970 census figures for the City of Lynch-

burg which show that black persons represent 23.42% of a total population of 54,083. While one in every four persons in Lynchburg is black, petitioner argues, only one of twelve members of the jury was a member of the black race. He alleges that racial imbalances in the composition of the jury resulted in a denial of due process of law under the 14th Amendment of the Constitution.

■ The Constitution, however, poses no requirement that the jury must mirror the community and reflect the various distinctive groups therein.

All that the Constitution forbids, however, is systematic exclusion of identifiable segments of the community from jury panels and from the juries ultimately drawn from those panels; a defendant may not, for example, challenge the make-up of a jury merely because no members of his race are on the jury, but must prove that his race has been systematically excluded. *Apodaca v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972).

■ As demonstrated above, petitioner's allegations and proof fall considerably short of establishing a constitutional violation based upon racial discrimination in the selection of the jury. There is no allegation or evidence of record to support the conclusion that blacks in Lynchburg are underrepresented on jury panels in a systematic, recurrent and uniform manner. Petitioner's only complaint is that his particular jury did not perfectly match the proportion of blacks residing in the City of Lynchburg.

The Fourth Circuit has ruled that, in order to state a prima facie case of systematic racial exclusion, the petitioner must show that there is a substantial disparity between the proportion of presumptively qualified blacks in the general population and their proportion on juries, and that such disparity is coupled either with additional positive indicia of discrimination or with a showing that the selection procedure provided an opportunity for discrimination.

*Stephens v. Cox,* 449 F.2d 657 (4th Cir. 1971). Here, there is no indication that blacks are continuously under-represented on jury panels in the City of Lynchburg nor has petitioner presented facts which demonstrate that the selection procedures even provide an opportunity for discrimination. The only evidence of record indicates that there is a great effort to make juries in Lynchburg reflective of the general population and to have a corresponding percentage of blacks in the community serve on juries.

■ Petitioner finally contends that the sentence of eight years imprisonment imposed by the court and his commitment to the Lynchburg City Jail pending transfer to a state facility constitutes cruel and unusual punishment. The court finds no merit in either of these allegations. His sentence was within the limits of the law and was imposed after a fair trial by a jury of his peers. *Jones v. Superintendent,* 360 F.Supp. 575 (W.D.Va.1973). Petitioner's complaint arising out of his confinement in the Lynchburg City Jail attacks the conditions of his confinement, as opposed to the validity of same and is therefore not an appropriate claim for relief under 28 U.S.C. § 2254.

Accordingly, it is ordered that the respondent's motion for summary judgment be granted. The petition for a writ of habeas corpus is hereby dismissed and relief denied.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record and to plaintiff.