PEOPLE v MATHIS

Docket No. 78-3544. Submitted May 9, 1979, at Detroit.—Decided October 1, 1979.

Frank Mathis was convicted of assault with intent to do great bodily harm less than murder, Recorder's Court of Detroit, Joseph A. Gillis, J. The defendant appeals, alleging that 1) his sentence violated constitutional standards in that the trial court penalized the defendant for exercising his right to have a jury trial instead of pleading guilty, 2) there was error in the introduction of prior written statements given by the people's witnesses where their testimony was inconsistent with such statements, and 3) there was prosecutorial misconduct arising out of statements made by the prosecutor during cross-examination of the defendant. *Held:*

1. The trial court's reference to an earlier discussion on the possible sentence should the defendant plead guilty was to an informal discussion and the offhand references cannot be considered binding on the trial court. At sentencing the trial court was fully informed, not only by testimony at trial, but also by the resources of the probation department, and properly considered the information that was before the court in sentencing the defendant.

2. The prosecution may impeach res gestae witnesses whom it is obligated by law to call. Introduction of the prior inconsistent statements was not error.

3. Any prejudice caused by the statement of the prosecutor on cross-examination of the defendant was cured by the instructions to the jury.

Affirmed.

1. Criminal Law — Sentences — Defendant's Refusal to Plead Guilty.

A sentencing judge may not take into consideration a defendant's refusal to plead guilty in determining the sentence.

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 583 *et seq.*
[2] [No Reference]
[3] 81 Am Jur 2d, Witnesses § 596.

2. CRIMINAL LAW — PLEA BARGAINING — TRIAL JUDGES.

   A trial judge should not actively participate in plea bargaining negotiations; the trial judge should be called upon in open court to approve the plea bargain reached by the adversaries, but should not be the instigator of, nor the conduit for, negotiations.

3. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — IMPEACH-MENT — STATUTES.

   The people are entitled to impeach the credibility of a properly endorsed and called res gestae witness by the use of his prior inconsistent statement (MCL 767.40a; MSA 28.980[1]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Paul G. Bruno,* Assistant Prosecuting Attorney, for the people.

*Charles Burke,* for defendant on appeal.

Before: M. J. KELLY, P.J., and R. B. BURNS and BASHARA, JJ.

M. J. KELLY, P.J. The defendant was charged with assault with intent to murder in violation of MCL 750.83; MSA 28.278. Following a jury trial in Detroit Recorder's Court he was convicted of assault with intent to do great bodily harm less than murder, contrary to MCL 750.84; MSA 28.279. On July 14, 1978, he was sentenced to 6-1/2 to 10 years imprisonment and appeals of right raising three issues.

I

Defendant first claims that the sentence violated constitutional standards in that the trial court penalized the defendant for exercising his right to have a jury trial instead of pleading guilty. Defendant analogizes to the United States Supreme

Court's holding in *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), wherein the Court held that an increased sentence upon reconviction of a defendant, after having had his original conviction set aside, must affirmatively appear to be free of vindictiveness on the part of the sentencing judge:

"In order to assure the absence of such motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentence proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 US at 726.

This case is not on all fours with *Pearce* because it does not involve a reconviction, but it is well-settled that a sentencing judge may not take into consideration a defendant's refusal to plead guilty in determining the sentence. *People v Travis,* 85 Mich App 297, 303; 271 NW2d 208 (1978), *People v Earegood,* 383 Mich 82, 84-85; 173 NW2d 205 (1970). The basis for this claim of error is a recorded conference that took place in the trial court's chambers immediately preceding commencement of trial. Defendant and his mother were present in chambers when the following discourse took place:

"My name, for the record, is David Cato, representing the defendant Frank Mathis in this matter.
"In a discussion I had with my client today and

before today, which was Sunday the 25th, my client told me that he would like to plead guilty in this matter.

"The only difference is that your Honor before a week ago had mentioned a possibility of a year maximum in the case—excuse me—a year minimum in the case, and I think that's changed this morning.

"So I think my client is aware of that.

"As far as the plea this morning, I think he would like to speak up on that issue.

"DEFENDANT: Exactly I want to know how much time I'm getting.

"THE COURT: I don't know until I get a pre-sentence report. You can take a trial and take your chances on life.

"I do understand Mr. Barron Gay is paralyzed for the rest of his life. They don't expect him to live more than three or four years. I'm sure you will be around long after that, and you will be back with your parents.

"Now, you can go out and hear the trial, and I will hear all the gory details, and the sentence will be accordingly; or you can take a plea in here.

"I told your lawyer a week ago the sentence would be one to twenty years. Now we have twenty witnesses sitting out there and a jury panel sitting there. It's no longer one to twenty, I can assure you of that.

"No promise is made as to your sentence. I'm not going to make any promises today.

"We can start the trial right now. It's up to you. The trial will start in 60 seconds if you don't make up your mind.

"If you are innocent, you should go to trial. If you didn't intend to kill him, you should go to trial."

Neither defendant nor plaintiff enlighten us with a context surrounding the trial court's reference to the discussion of "a week ago". The record does not show any pretrial hearing occurring the week prior. Apparently the pretrial was conducted on May 11th because there is a form in the record entitled "Final Conference Memorandum" which includes the following information:

"PRESENT: THE HON. Joseph A. Gillis D 5-11-78

"The court and counsel have reviewed the court file and all pleadings filed. The transcript of any preliminary examination, appearances of counsel, prior rulings of the Court, and all other necessary filings are present and in good order.

\* \* \*

"The Court has informed the defendant of the Prosecutor's position regarding plea negotiations. The defendant understands that the Court will not accept any Plea to a reduced charge and will not discuss sentence or other concessions after the close of the final conference."

This form is not signed, but bears signature lines for counsel for defense, assistant prosecuting attorney and defendant.

A motion was praeciped for June 2, 1978, before Judge Gillis on behalf of a co-defendant designated as a "MOTION TO HAVE JUROR QUESTIONNAIRE PRODUCED IN COURT ROOM ON DAY OF TRIAL". The co-defendant pleaded on June 8, 1978, before Judge Gillis. There is nothing in the record that has anything to do with any proceeding in this case that took place a week prior to the trial date. We have no record of any kind which describes the context in which a communication with the defense lawyer was made regarding a one to twenty sentence.

This case presents a good example of difficulties which can arise when a trial judge actively participates in the plea bargaining process. We have said in dicta that trial courts should not actively participate in plea bargaining negotiations. *People v Bennett,* 84 Mich App 408; 269 NW2d 618 (1978), *lv den* 405 Mich 835 (1979). We are well aware that in an overburdened high-crime population center trial courts are disposed to accept plea

bargains involving favorable sentence considerations to defendants in advance of trial. Our concern is with the extent of the trial judge's participation in such negotiations. This Court favors a nonparticipatory, passive approach to the plea bargaining process on the part of the trial bench. The trial judge should be called upon in open court to approve the plea bargain reached by the adversaries, but should not be the instigator of, nor the conduit for, negotiations. A defendant's right to trial is sacrosanct and his judge must be, and appear to be, impartial.

Obviously, in this case, the trial judge's reference was to an informal discussion. It may have been an untoward intrusion on the bargaining process, as it is not even apparent that the prosecutor was present. There is no record of any previous proceedings documenting this reference, and we cannot conceive how such an offhand reference could be considered binding on the trial court. If the defendant missed a plea bargain opportunity, it cannot be enforced on appeal as it never ripened into a plea under GCR 1963, 785.7. Certainly the trial court could have rejected any such plea bargain, even had it ripened into a formal recorded proceeding. See *People v Hagewood,* 88 Mich App 35; 276 NW2d 585 (1979). At sentencing the court was fully informed, not only by the testimony at trial, but also by the resources of the probation department, and properly considered the information that was before it. *United States v Grayson,* 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978).

## II

Defendant next alleges error in the introduction of prior written statements given by the peoples'

witnesses where their testimony was inconsistent with such statements.

We believe the defendant's specification of error is answered by MCL 767.40a; MSA 28.980(1) which provides:

"Witnesses whom the people are obliged by law to call as res gestae witnesses may be impeached the same as though such witnesses had been called by the respondent."

The trial court properly instructed the jury in accordance with *People v Williams #2,* 45 Mich App 630; 207 NW2d 180 (1973).

## III

Defendant's final claim of error is prosecutorial misconduct. The defendant cites an instance where, after the defendant hesitated in responding to the prosecutor's question on cross-examination stating, instead: "Would you give me a chance", the prosecutor responded: "I'll give you more of a chance than you gave Barron Gay". A review of the transcript indicates that the defendant was a recalcitrant witness, often argumentative and antagonistic. If the prosecutor was intemperate in the heat of the trial, the jury was very properly instructed that:

"Any statements or arguments of the attorneys are not evidence but are only intended to assist you in understanding the evidence and the theory of each party.

"The questions which attorneys ask witnesses are not themselves evidence. It is the answers of witnesses which provide evidence.

"You should disregard anything said by an attorney

which is not supported by the evidence or by your own general knowledge and experience."

We find no reversible error in this regard.
   Affirmed.