578 So.2d 1145 (1991)
Cecil Calvin VANDIVER, Appellant,
v.
STATE of Florida, Appellee.
No. 90-0491.
District Court of Appeal of Florida, Fourth District.
May 8, 1991.
*1146 Richard L. Jorandby, Public Defender, and Robert Friedman, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joseph A. Tringali, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
The defendant was charged by information with three separate crimes: two counts of interference with custody, and one count of familial sexual battery. The jury found him guilty of two counts of attempted interference with custody and guilty of familial sexual battery.
At trial, defense counsel stipulated that the victim, a sixteen-year-old girl, and the defendant's daughter were wards of the state and in the custody of the Department of Health and Rehabilitative Services (HRS) at the time of the alleged offenses.
An HRS worker in Okeechobee testified that she wrote a letter to the defendant on May 22, 1989, informing him that his daughter had run away from placement. In response to the letter, she received a call from the defendant on June 2, 1989, informing her that he had not heard from his daughter, nor did he know where she was. On June 23, 1989, the HRS worker visited the defendant at his residence. She had to knock on the door numerous times before the defendant eventually answered. The defendant acknowledged that both his daughter and the victim had been to his home but informed the HRS worker that the pair had already left.
Both girls were eventually returned to HRS custody, the daughter having stayed with the defendant for approximately two weeks and the victim having stayed in the defendant's trailer for only two days.
The defendant's fourteen-year-old son, who was living with his father at the time of the alleged offenses, testified that when his sister and the victim arrived, the defendant knew that they were missing from custody but told them that they should call HRS. His sister then vowed to run away again if she had to go back. The son also testified that the defendant gave the two girls a place to stay and food to eat; that shortly after the girls arrived, on June 17, 1989, the defendant left and returned home with a VCR and some movies, one of which was x-rated; that after the four of them watched the movie for "a while," the defendant and the victim went to the back bedroom and shut the door; and that he then peeked into the room and observed the defendant on top of the victim, having sex.
The defendant's sixteen-year-old daughter testified that she had been committed by the court to an HRS camp at Eckerd, where she developed a friendship with the victim. The two girls originally left the *1147 camp and went to Altamonte Springs, but they later decided to go to the defendant's home. The defendant's daughter also testified that she was with the defendant when the HRS worker arrived to look for the girls, at which time he told her to go hide in the bathroom. She corroborated the testimony of the defendant's son as to the events on the day in question, as did the victim. On cross-examination, the defendant's daughter testified that she and the victim had been gone from the camp for about one month before they arrived in Okeechobee County; that the defendant had not encouraged her to leave the camp; and that when she arrived at her father's house, he told her that she should call HRS.
For the two attempted interferences with custody convictions, the defendant was sentenced to time served. He was sentenced to twenty-two years in prison, followed by an eight-year term of probation, for the familial sexual battery conviction.
We reverse all three of the defendant's convictions. As for the charge of familial sexual battery, the evidence was insufficient to support a conviction for sexual battery on a child by a person in familial or custodial authority. The record conclusively demonstrates that the victim spent only two days with the defendant, who had no contact with the victim before his daughter brought her to his home. The defendant did not solicit the victim's visit; he informed her to notify HRS upon her arrival. The state rests its case solely upon the fact that the defendant lodged and fed the victim for a two-day period and made her "feel at home" during her brief stay. In our view, to extend the application of the statute, as written, to the facts of this case would be unreasonable. See Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986). Because retrial for familial sexual battery would violate the proscription against double jeopardy, he is entitled to discharge as to this charge.
As for the remaining two charges, we must reverse the two-count convictions for attempted interference with custody for two additional reasons and remand for new trial on these charges, subject to the requirements of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
First, the trial court erred in allowing the state to show to the jury the prejudicial, irrelevant, x-rated movie, part of which was viewed by the defendant and the victim prior to the defendant's intercourse with the child victim.
Second, both parties concede that the case of Huering v. State, 513 So.2d 122 (Fla. 1987), controls the admissibility of similar fact evidence in familial sexual battery cases.
The court in Huering noted that cases involving sexual batteries committed within the familial context present special problems. Usually, the victim knows the perpetrator, and identity is not a problem. Id. at 124. The victim is typically the sole eye witness and corroborative evidence is scant; therefore credibility becomes the focal issue. Id. Here, the defendant's son and daughter were two eye witnesses to the sexual act, corroborating the testimony of the victim. Accordingly, the admission of similar fact evidence in this particular case constituted reversible error.
DOWNEY, GLICKSTEIN and GARRETT, JJ., concur.