STATE of Wisconsin, Plaintiff-Respondent,

v.

John E. STEPHENS III, Defendant-Appellant.†

Court of Appeals

*No. 95–2103–CR. Submitted on briefs February 12, 1996.—Decided March 14, 1996.*

(Also reported in 548 N.W.2d 108.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Jeffrey D. Knickmeier* of Stoughton.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Mary V. Bowman,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   We granted John E. Stephens leave to appeal from a nonfinal order denying his motion to dismiss a criminal prosecution for armed robbery on statutory and constitutional double jeopardy grounds.

The issue is whether a prosecution is barred, either by statute or constitutional principles, due to a previous juvenile court proceeding involving (to some degree) events giving rise to the criminal charges. More specifically, we are asked to decide whether the prior juvenile proceedings in this case constituted a juvenile "disposition" within the meaning of §§ 48.35(1)(c) and 48.39, STATS.,[1] and whether cases interpreting and applying constitutional prohibitions against double jeopardy, notably *Breed v. Jones,* 421 U.S. 519 (1975), bar the subsequent prosecution.

---

[1] The statutes provide as follows:

**48.35   Effect of judgment and disposition.**

   [(1)](c)   Disposition by the court assigned to exercise jurisdiction under this chapter of any allegation under s. 48.12 [delinquency proceedings] shall bar any future proceeding on the same matter in criminal court when the child reaches the age of 18.

**48.39   Disposition by court bars criminal proceeding.** Disposition by the court of any violation of state law coming within its jurisdiction under s. 48.12 [delinquency proceedings] bars any future criminal proceeding on the same matter in circuit court when the child reaches the age of 18.

We decide both issues against Stephens and affirm the order.

The facts are not in dispute. The complaint charging Stephens with committing an armed robbery on October 3, 1994, was filed on March 2, 1995. Stephens, born on May 31, 1978, was sixteen years old at that time. He was waived into adult court and, after a preliminary hearing, an information was filed charging him with the offense, as a party to the crime.

Stephens moved to dismiss the information, arguing that his robbery prosecution was barred by §§ 48.35(1)(c) and 48.39, STATS., and by the double jeopardy clause of the United States Constitution, because he had "previously been prosecuted and punished for the conduct alleged in th[e] complaint [and information]" in juvenile court. *See* U.S. CONST. amend. V.

The juvenile court action to which Stephens refers was a proceeding to extend a previously issued order adjudicating him delinquent for various violations of state law. The dispositional order in that case committed him to Lincoln Hills School and set forth a "case plan" containing several "treatment goals" for him to meet by February 1995.

In January 1995, Stephens's social worker and others involved in his rehabilitation and treatment petitioned the juvenile court to extend the order for one year. The petition alleged that Stephens had "continuing treatment needs that need to be addressed" and that an extension of the order would aid in those efforts. The face of the petition also recited that Stephens "has been recently returned to Lincoln Hills School from the community and is currently facing charges of masked armed robbery."

The petition was accompanied by a four-page report entitled "Request for Extension of Dispositional

Order" prepared by social workers and others at Lincoln Hills School. The report summarized Stephens's juvenile court history, which included delinquency determinations for battery, carrying a concealed weapon, possession of a dangerous weapon and causing bodily injury while armed with a dangerous weapon, and discussed the objectives of the case plan and treatment goals that the earlier dispositional order had specified.

The report outlined the extent to which Stephens had progressed under the plan and discussed the therapy and treatment he had undergone as well as his progress and problems in school and in the community.[2] It stated that, while he had successfully completed several of the programs prescribed for him, his social workers indicated that he "will need continued work on anger management, his education, and learning to choose a positive peer group when he returns to the community to insure success in the future."

After discussing Stephens's involvement in the armed robbery, the report concluded that Stephens required further supervision in several areas in order to meet the original treatment goals and that an extension of the dispositional order would aid in those efforts.

> John has pending charges on the armed robbery and this certainly seems to indicate, along with having his aftercare supervision revoked for partici-

[2] As indicated, the original dispositional order committed Stephens to Lincoln Hills School. He was conditionally released from Lincoln Hills to his father's home "on aftercare supervision" in June 1994. His conditional release was rescinded in October 1994 after allegations of his participation in the armed robbery surfaced.

pation in this event, that he has areas he needs to work on from a treatment perspective. John will require an Extension of Dispositional Order to work on all of his treatment goals regarding decision making, authority, rules and regulations compliance, as well as developing a greater appreciation for the rights and feelings of others.

. . . .

. . . [I]t is being recommended that John have his Dispositional Order extended for a period of one year based on perceived treatment needs and community safety issues.

After holding a hearing on the petition, the juvenile court extended the order for a period of six months.

The trial court rejected Stephens's argument that the prior juvenile court extension proceedings precluded the armed robbery prosecution, and it denied his motion to dismiss on double jeopardy grounds because those proceedings did not involve any assessment of guilt with respect to the robbery and did not punish him for it. The court stated:

[T]he way I see it, aftercare supervision or supervision of a youth on a correctional commitment can be extended from year to year.

In this case, it is true that the evidence in support of the extension relied primarily on a new offense, but that does not mean that Mr. Stephens was being punished for this offense. . . . [H]e was under a disposition for [the] earlier offense, and it never changed to being a disposition for the new offense.

. . . He has never been found guilty. He has faced none of the other consequences that flow from a finding of guilty.

. . . .

88

There has been no adjudication of this offense in juvenile court. The facts surrounding the offense were used as a reason to extend supervision, but that supervision was as a result of a prior conviction and not as a result of [any] conviction [for the new offense].

So, I do not conclude that there was any double jeopardy violation here and the motion to dismiss on that ground is denied.

Other facts will be discussed in the body of the opinion.

## I. Is the Prosecution Barred by Statute?

■

Stephens argues first that §§ 48.35(1)(c) and 48.39, STATS.—which, as indicated above, provide that juvenile court "[d]isposition" of "any allegation [of delinquency]" or "any violation of state law" bars any future criminal prosecution "on the same matter"—prohibit his armed robbery prosecution in circuit court. Interpretation and application of a statute are questions of law that we review de novo. *State ex rel. Sielen v. Circuit Court for Milwaukee County*, 176 Wis. 2d 101, 106, 499 N.W.2d 657, 659 (1993).

Without citing authority on the point, Stephens claims that the "extension" was, in essence, a sham: that rather than file a new petition seeking an adjudication of delinquency for the armed robbery—to which jeopardy would attach[3]—the State simply sought an extension of the existing dispositional order to achieve the same end. "Using this alternative procedure and

---

[3] Jeopardy attaches in juvenile court fact-finding hearings to determine delinquency when the first witness is sworn in trials to the court or, in a jury trial, when the jurors are sworn. Section 48.317, STATS.

labeling the documents differently," Stephens says, "does not change the nature of the proceeding. It is still an adjudication; it addresses and punishes new conduct, and the jurisdictional basis is the same."

The import of §§ 48.35(1)(c) and 48.39, STATS., is plain. They speak in terms of "*disposition*" of charges of criminal conduct contained in a delinquency petition, and we disagree with Stephens's argument that the extension proceedings either "disposed of" or "adjudicated" his guilt on the armed robbery charge. The State correctly analyzes the statutes in its brief:

> In sec. 48.35(1)(c) [the word] "disposition" is modified and limited by the clause, "of any allegation under s. 48.12," which in turn is limited to an allegation that the person violated a criminal law. Section 48.39 circumscribes and modifies "disposition" by the clause, "of any violation of state law coming within its jurisdiction under s. 48.12." [As a result, the] double jeopardy protection of both statutes is clearly limited to dispositions of allegations that a juvenile committed a crime . . . .

The extension petition alleged not that Stephens was delinquent for his participation in the robbery but only that he had "continuing treatment needs that need to be addressed through an Extension of [the] Dispositional Order." That is consistent with the applicable law for, under the juvenile code, law violations are not adjudicated at extension hearings.[4] In *Interest*

---

[4] According to § 48.365, STATS., which governs the extension of juvenile court orders, the issues to be considered in extension proceedings relate to determining "to what extent the [original] dispositional order has been meeting the objectives of the plan for the child's rehabilitation or care and treatment" and "whether reasonable efforts were made by the agency primarily

*of R.E.H.*, 101 Wis. 2d 647, 305 N.W.2d 162 (Ct. App. 1981), we discussed the difference between extension hearings and delinquency adjudications[5] under the code:

> While a determination of delinquency or dangerousness is required at the time of the original dispositional hearing, *the legislature has expressed a different purpose in the extension provisions.* If the placement has not met the objectives of the treatment, care or rehabilitation as specified in the original . . . order, or the child's adjustment has not reached the point where the court can terminate control or provide less restrictive control, the dispositional order may be extended. Since the child has already been adjudged delinquent or dangerous, a rehearing on these matters would be redundant. Rather, *the purpose of the hearing to extend the dispositional order is to evaluate the child's progress and to determine whether continued control is necessary.*

*Id.* at 652-53, 305 N.W.2d at 166 (footnotes omitted; emphasis added).

responsible for providing services to the child." Sections 48.365 (2g)(a) and (2m)(a).

[5] Section 48.31(1), STATS., calls for fact-finding hearings "to determine if the allegations of a [delinquency] petition . . . are supported beyond a reasonable doubt . . . ." *See Interest of N.E.*, 122 Wis. 2d 198, 204, 361 N.W.2d 693, 696 (1985) (fact-finding hearings under § 48.31 constitute "the adjudicatory phase of a delinquency proceeding"). The juvenile code defines "delinquency" as violation of state or federal criminal law. Section 48.02(3m), STATS.

Stephens has not persuaded us that §§ 48.35(1)(c) and/or 48.39, STATS., bar his armed robbery prosecution.

## II.  Constitutional Double Jeopardy

The double jeopardy clause protects persons against: (1) a second prosecution for the same offense after either acquittal or conviction; and (2) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Stephens, repeating his assertions that the extension order was, in effect, "a judgment of conviction and sentence . . . for the conduct alleged in the instant [criminal] case," bases his constitutional double jeopardy challenge on *Breed v. Jones*, 421 U.S. 519 (1975).

In *Breed*, the Supreme Court considered "whether the prosecution of [the defendant] as an adult, after Juvenile Court proceedings *which resulted in a finding that [he] had violated a criminal statute,*" violated [the double jeopardy clause]. *Id.* at 520 (emphasis added). The defendant in *Breed* had been adjudicated delinquent in juvenile court for committing an armed offense. At the dispositional hearing the juvenile court found the defendant "unfit for treatment as a juvenile" and ordered that he be prosecuted as an adult. He filed a habeas corpus proceeding claiming that prosecution in adult criminal court for the same offense for which he was adjudicated delinquent in juvenile court would violate the double jeopardy clause. *Id.* at 524. The Supreme Court agreed, holding that "the prosecution of [the defendant] in [criminal] Court, *after an adjudicatory proceeding in Juvenile Court,* violated the Double Jeopardy Clause . . . ." *Id.* at 541 (emphasis added).

We think *Breed* gives little aid to Stephens's argument. As indicated by the italicized language, the Court based its holding on the fact that the defendant's guilt on the criminal charge had been *adjudicated* in juvenile court.[6] In this case, as we have indicated earlier, Stephens's guilt or innocence for the armed robbery was never adjudicated in the extension proceedings. The extension petition was directed toward securing compliance with the treatment plan and other conditions specified in the original order, and while admittedly the petition and supporting documents prominently mentioned the "new" offense, they also addressed his adaptation and progress in the prescribed treatment programs.

The extension hearing took a similar path. The assistant district attorney reminded the court that in the adjudicatory proceedings several months earlier it had found that Stephens represented a danger to the public and was in need of "restrictive custodial treatment," and that his prior offenses "plus the record of participation in treatment and the record of [his] behavior" contained in the extension petition and supporting documents would "sustain a finding by the Court at this time that [he] continues to be a danger to

---

[6] The Court emphasized the adjudicatory nature of the juvenile proceeding throughout its opinion. It noted, for example, that the juvenile court "adjudicatory hearing" was akin to "a traditional criminal prosecution" and that the defendant had actually been "tried in Juvenile Court" for the same offense that was the subject of the criminal information. *Breed v. Jones*, 421 U.S. 519, 530, 532 (1975). It also noted that he had been "subjected to the burden of two trials for the same offense" and had been "twice put to the task of marshaling his resources against those of the State" in fighting the criminal charges. *Id.* at 533.

the public and in need of restrictive custodial treatment." The court—the same judge who had heard the proceedings that gave rise to the original order—granted the extension petition, limiting it to six months. There was no mention of Stephens's participation or culpability in the armed robbery.

In short, the extension proceedings followed the rehabilitative and treatment objectives of § 48.365, STATS., as amplified in *Interest of R.E.H.*, 101 Wis. 2d 647, 305 N.W.2d 162 (Ct. App. 1981). Both the procedures and the objectives of extension proceedings are entirely separate and distinct from those of "adjudicatory" proceedings under the code—the "fact-finding" hearings under § 48.31, STATS., convened to determine whether the juvenile in fact committed the offense(s) alleged in the delinquency petition. As we noted above, it is at those hearings, where guilt is determined, that jeopardy attaches under the code. *See supra* note 3.

The term "jeopardy" denotes "risk." *Breed*, 421 U.S. at 528. It is traditionally recognized as describing the type of risk that is "associated with a criminal prosecution"—an " 'action[ ] intended to authorize criminal punishment to vindicate public justice.' " *Id.* at 528-29 (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548-49 (1943)). In this case, not only was there no "adjudication" or "disposition" in the extension proceeding of any allegation that Stephens had been involved in the armed robbery but he was never placed at risk of any such adjudication or disposition.

█

We also reject Stephens's argument that he was "punish[ed]" for the robbery when, in conjunction with the extension order, his conditional release from Lincoln Hills School was rescinded. This was not, as the dissent states, a "*new* deprivation" of Stephens's liberty

94

"unrelated" to the prior juvenile disposition. As we indicated above, the original delinquency dispositional order directed his custodial placement at Lincoln Hills, where he remained until he was conditionally released on "aftercare supervision" in June 1994, and that conditional release was rescinded in October in light of his involvement in the robbery and his perceived need for further supervision and treatment.

We are satisfied from our examination of the record of the extension proceedings that they were in no sense punitive in nature but rather were consistent with their rehabilitative purposes. *See Interest of R.E.H.*, 101 Wis. 2d at 652-53, 305 N.W.2d at 166; § 48.365, STATS.[7]

---

[7] In *State v. Killebrew*, 115 Wis. 2d 243, 251, 340 N.W.2d 470, 475 (1983), the supreme court stated:

> Governmental action is punishment under the double jeopardy clause if its principal purpose is punishment, retribution or deterrence. When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment.

The *Killebrew* court also noted that "double jeopardy applies only to proceedings that are 'essentially criminal,'" and that " '[a]bsent a showing of an expressed intent to punish . . ., if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." ' " *Id.* at 248, 250, 340 N.W.2d at 474 (quoting *Breed*, 421 U.S. at 528, and *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979)) (internal quoted source omitted).

Finally, we note that revocation of an adult offender's parole is not considered to be "punishment" for any "new" transgressions that may have led to the revocation; rather, any element of punishment in the revocation " 'is attributable to the crime for which the parolee was originally convicted and sentenced.' " *Killebrew*, 115 Wis. 2d at 249, 340 N.W.2d at 474

Because the extension proceeding was neither an adjudication nor a disposition of any charges or allegations relating to the robbery, and because its purpose—and its effect—was not punitive but rehabilitative, Stephens's constitutional double jeopardy challenge must fail. The subsequent robbery charge neither prosecuted nor punished him twice for the same "offense." *Pearce*, 395 U.S. at 717.

*By the Court.*—Order affirmed.

GARTZKE, P.J. (*dissenting*). These extension proceedings included an implicit adjudication that Stephens was guilty of armed robbery. The proceedings were brought in part because of the robbery. According to the report that accompanied the request for an extension of the dispositional order, Stephens "did not fight his revocation and agreed to be revoked on the above charges" for robbery. The revocation therefore operated as adjudication on the equivalent of a guilty plea. No need existed for more formal proceedings, but that does not deprive those proceedings of their essence: an adjudication of guilt.

The disposition resulting from the adjudication was an extension of the dispositional order. The State did not bring a new petition for an adjudication on the basis of the armed robbery but the request sought had the same result—Stephens was ordered deprived of his liberty for an additional six months. The deprivation is

(quoted source omitted). We are satisfied from the record of the extension petition and hearing, which we have discussed at length above, that the same is true with respect to the rescission of Stephens's conditional release on the former juvenile charge that accompanied the extension of the original dispositional order.

new. It is unrelated to his prior disposition except to extend it.

Although the majority is satisfied that the extension proceedings were not punitive, the fact is that because Stephens in substance pleaded guilty to armed robbery, he was ordered deprived of his liberty for an additional half year. Jeopardy resulted. To try him later as an adult for the same crime put him twice in jeopardy. As the United States Supreme Court said in *Breed v. Jones*, 421 U.S. 519, 529 (1975),

> We believe it is simply too late in the day to conclude . . . that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years.

The rehabilitative purpose of the commitment does not change the drastic nature of the action taken—the fact remains it is incarceration. *Id.* at 530 n.12.

Stephens's subsequent trial as an adult on the armed robbery charge is prohibited by the Fifth Amendment to the United States Constitution and Article I, § 8 of the Wisconsin Constitution. His conviction following that trial must be vacated.