DECISION
This case, involving a series of traffic violations by Deborah A. Wildi, is before the court for a second time. In City v. Wildi (2001), Franklin App. No. 00AP-1387 ("Wildi I"), this court rendered a memorandum decision remanding the case to the trial court to conduct new sentencing proceedings. The particulars of Wildi I are addressed below in our discussion of the assignment of error.
On November 16, 2001, the trial court conducted a second sentencing hearing in accord with this court's mandate. Since the nature of this appeal requires a "comparison" of sorts, the details of the trial court's sentence on remand are also discussed below.
Deborah A. Wildi ("appellant") has appealed again, through counsel, assigning a single error for our consideration:
 The trial court improperly imposed a harsher sentence following reversal and remand from the Court of Appeals, in violation of the principle set forth in North Carolina v. Pearce (1969), 395 U.S. 711 * * *.
We turn first to the record and to Wildi I to glean both the facts of the case and the bases underlying our reversal of appellant's sentence.
The facts here are few and undisputed. On November 3, 2000, appellant entered pleas of "no contest" to two speeding violations: one was a third-offense speeding violation, a misdemeanor of the third degree; the other was a minor misdemeanor. A third speeding charge was dismissed because, appellant concedes, a prosecution witness failed to appear. (Brief of appellant at 3.)
In sentencing appellant the first time, the trial judge imposed a fine of $100 and costs on the minor misdemeanor ticket. On the third-degree misdemeanor charge, the judge imposed a $750 fine and costs; the judge suspended $500 of the fine, in addition to suspension of a 60-day jail term. Finally, the judge placed appellant on probation for three years.
From the above sentence, appellant brought her first appeal in this case[1], Wildi I.
In Wildi I, this court held that the trial judge made two errors requiring reversal and resentencing. First, the judge "* * * wrote down the wrong code section for the third[-]offense speeding violation, instead assigning a code section which involves drag racing." Id. at 1-2. Second, the judge imposed an impermissible fine:
 * * * A third offense of speeding within a one-year period is a misdemeanor which is punishable by a fine of up to $500 and a term of incarceration of up to sixty days. The trial judge assessed a fine of $750 and then suspended $500 of that fine. The trial court's sentence exceeds that permitted by the Columbus City Code and, therefore, must be reversed. * * *"
Id. at 2.
On remand of this case, the trial court conducted the new sentencing hearing on November 16, 2001. The judge sentenced appellant as follows: a $250 fine and court costs, with the fine suspended for 80 hours of community service; three years of probation; and, 60 days in jail, with 50 of those days suspended. With respect to the jail time, the judge indicated that those 10 days would be enforced if appellant was cited again for another traffic offense (in legal vernacular, "provided no convictions" or "PNC") or if she failed to complete the community service by April 26, 2002.
As indicated by her assignment of error, appellant relies upon North Carolina v. Pearce (1969), 395 U.S. 711, for her contention that the trial court violated her due process rights by imposing a "harsher sentence" following her successful appeal in Wildi I. She contends that the trial court failed to make the requisite findings to support imposition of the "harsher sentence" and, therefore, Pearce mandates a determination here that "vindictiveness in the new sentence is presumed."
In Pearce, the United States Supreme Court held, in pertinent part:
 Due process of law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal * * *, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
 In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentenced may be fully reviewed on appeal.
Id. at 725-726.
Prior to making his "findings" at the sentencing hearing, the trial judge first heard from appellant's counsel[2], who urged the judge to consider various "personal issues" (primarily financial difficulties stemming from appellant's divorce) which would cause appellant "undue hardship" were she to be ordered to pay a fine or court costs and/or ordered to serve any jail time. The judge then permitted appellant to speak at length on her own behalf.
Because the trial court's "findings" are critical in this instance pursuant to Pearce, we quote at length the judge's rationale as stated on the record, which also includes further discourse between the judge and appellant, during which she attempts to explain her behavior:
THE COURT: Now you let me talk.
 The reason this was a misdemeanor of the third degree is because of your prior moving violations when you came in front of me in November of last year. The purpose of my sentence was merely to keep you from doing what you did. You say that your offense was not a substantial risk to anyone? You were going 88 miles an hour in a 65 mile-an-hour zone. If that's not a risk, I don't know what is.
* * *
 The Court of Appeals said, when they reversed this case and sent it back, that the purpose of my sentence was to act as a deterrent; that, granted, there was a mistake in the writing of the citation and what they classified it, so, therefore, your appeal was granted, it was sent back. And they were very obvious to you in their decision on what I might do on resentencing, might be entirely different based on what you've done since then. And let me tell you what you've done since then. You continued to drive in an irrational, irresponsible manner. Now, what do you think I need to do? Just sit here and slap your hand? You think this is funny?
[APPELLANT]: No.
 THE COURT: I don't either. I'm trying to get through to you that your job is not to drive like you're doing. You're not to commit the traffic offenses that you have continuously done since you've been here. You know, if I don't put you on probation, I don't get all your cases so you don't get to see me. You already think that I'm prejudiced against you, and I'm not. I'm just trying to get you to stop. What's it going to take? Me putting you in jail to get your attention? I'll do it. I have a right to do it because a misdemeanor of the third degree says I can put you in jail for 60 days. It's my discretion.
Now, is there anything else you'd like to say?
[APPELLANT]: Yes.
* * *
 Last violation was a year ago, almost, December 24. And it was again in relation to my divorce. Most of those tickets that I've gotten since the divorce was filed, and all of these tickets since the divorce was filed were called in, some of them by my own husband. So my driver's license is being targeted. At least half of those tickets in fact, more than half of them were on my [newspaper] route.
 And the last time the Worthington police rookie pulled me over, his supervisor told him to move along and leave me alone. So you keep looking at my driving record. Most of those tickets were given in the middle of the night with no one else on the road. And even Worthington negotiates the points on those.
 THE COURT: You know what I see, [c]ounsel? I see somebody who really still stands here before me today and doesn't think that she has done anything wrong; that everybody else is against her but her. She still doesn't get the fact that she has probably one of the worst traffic records I've seen from an individual who hasn't done anything major.
 [APPELLANT]: I understand the driving record. And I'm currently under PNC.
* * *
 THE COURT: Yeah, I know it. Well, you're now on probation again. $250 fine plus court costs. I will suspend the $250 for 80 hours of community service, which she will do. She'll have to pay the court costs of this action by February the 28th.
 Sixty days in jail, 50 days suspended, 10 days in * * * [jail]. My inclination was to send you today, but your attorney has been very eloquent in convincing me not to do that. So I'm going to set an enforcement date of May the 3d. And whether you do those ten days depends on you. If you have another traffic ticket, and I don't care what it ends up being pled out to, one more traffic ticket between now and April the 26th of next year, and if you do not complete your community service as ordered by that date, then you might as well report for your ten days in jail, because that's what's going to happen.
 I'm placing you on three years' probation. The conditions are * * * [PNC]; you're to do your 80 hours of community service; you will pay your court costs by the date set. * * * And if you complete your community service by 4-26, the Court will consider suspending those ten days. I don't want to put you in jail, but I will if you keep up your attitude and your driving. * * * [Tr. 6-9.]
First, the trial court was correct in its interpretation of language employed in Wildi I with respect to the trial court's potential options on remand in fashioning an appropriate sentence. Furthermore, this court unequivocally recognized the trial court's discretion in fashioning an appropriate sentence under the factual circumstances presented by appellant's case. Specifically, this court stated in Wildi I:
 * * * The trial court has the power give any sentence within the range permitted by the Columbus City Code for a misdemeanor of the third degree. The trial court can give any or all of a fine of $500 plus the court costs. The trial court can incarcerate [appellant] for any period of time up to sixty days. The trial court can suspend all or part of any fine and/or period of incarceration it imposes.
 We, as an appellate court, are not in a position to say what sentence the trial court will find appropriate since the trial court cannot impose the fine originally imposed. We, likewise, cannot say whether any or all of the sentence will be suspended on conditions of probation and [PNC], especially involving speeding.
 In its original sentence, the trial court clearly was attempting to encourage [appellant] to use better judgment when she is behind the wheel of a car. No doubt such encouragement will motivate the trial court on remand. However, we as an appellate court are not in the best position to determine what form of encouragement best suits [appellant's] situation. The trial court is best suited to make that determination. [Emphasis added.]
Id. at 2-3.
The sentence imposed by the trial court on remand was not violative of either the spirit or the letter of Pearce, supra. In stark contrast to the "vindictiveness" contemplated by Pearce and its progeny, the trial judge exercised considerable reason, patience and, arguably, even restraint in imposing a sentence not even approximating the maximum penalties available to him. Indeed, one might construe the latter sentence imposed on remand as being less "harsh" than the original sentence.
On remand, the trial judge clearly considered appellant's stated financial difficulties by modifying the original fine to $250 and then suspending that fine in its entirety and allowing appellant instead to perform community service. Appellant's "original" sentence required payment of the fine; the trial judge's fashioning of the new sentence cannot be deemed "harsh" under these circumstances. In fact, on appeal, appellant now complains that the community service is "harsh" as compared to the original "fairly marginal" fine of $250. (Brief of appellant at 7.) A review of this record, including appellant's complaints about her current "lot in life" and rationalizations attempting to explain her remarkable driving record, strongly suggests that appellant deems excessively "harsh" any form of punishment.
The trial court acted well within its discretion in sentencing appellant on remand and did not run afoul of the principles of Pearce in any manner.
The assignment of error is overruled.
Having overruled the assignment of error, the judgment of the trial court is affirmed.
Judgment affirmed.
KLATT and BRYANT, JJ., concur.
[1] Our research reveals at least one other appeal Deborah Wildi has brought to this court; this other case was alluded to by defense counsel in the instant case, as observed infra in footnote 2. In an opinion rendered March 12, 2002, a separate panel of this court affirmed a sentence imposed for another moving violation changing lanes without safety which occurred on December 24, 2000; an additional charge of "weaving" was dismissed in exchange for Ms. Wildi's no contest plea to the other charge. City of Whitehall (2002), Franklin App. No. 01AP-762 (trial court did not abuse its sentencing discretion given, inter alia, Wildi's "horrible driving record").
[2] Appellant's counsel acknowledged that appellant was cited for another moving violation after being sentenced by this judge the first time. Alluding to the City of Whitehall case which is the subject of footnote 1 in the instant case, counsel stated, "That moving violation is currently on appeal. Other than that, the only other violations were those of equipment violations." (Tr. 3.) Counsel did not elaborate to include the fact that the "new" moving violation occurred on December 24, 2000, just weeks after she was sentenced by the judge in this case the first time in November 2000.